## Moshier vs. Reding & al.

A. lessee is estopped to deny the title of his lessor in an action between them. He must first restore the possession which he obtained from his landlord, before he can avail himself of a title acquired subsequent to his entry.

No particular form of words is necessary to constitute the relation of landlord and tenant; it is sufficient if it appear to have been the intention of one to dispossess himself of the premises, and the other to enter under him for a determinate period pursuant to an agreement.

At the expiration of a lease for years, no notice to quit is necessary to dissolve the relation of landlord and tenant. But if the tenant holds over after the termination of his lease, and the lessor assents to it, (which may be inferred from his silence,) the lessee will become tenant from year to year, and cannot be dispossessed without regular notice.

A. having bargained for the purchase of a lot of land and entered thereon, though without deed, bargained for the sale of the same land to B. covenanting to convey to the latter on payment of $800 in equal annual payments, and stipulating that B. and his assigns should enter and take the profits to their own use. B. entered and afterward sold his possession and all his rights to C. The latter entered and occupied for years, neither he nor B. paying any of the installments due to A. and the latter not objecting to their holding over after such non-payment. *Held*, that these facts created the relation of landlord and tenant between A. and B. and his assigns. That A's assent to the holding over of B. and his assigns after the termination of the first year, constituted a tenancy from year to year, and that B. and his assigns could not be dispossessed without regular notice to quit.

A. for entering and cutting the grass, without the consent of C. was held to be a *trespasser* : and that this liability to C. was not affected by his procuring a deed from the one of whom he purchased, subsequent to the act complained of.

THIS was trespass, *quare clausum fregit*, and was tried upon the general issue, before *Parris J.* at the *June term* in this county, 1834.

The facts, substantially, as stated in the bill of exceptions, were thus : *John Black*, as agent of the *Bingham heirs*, in the year 1824, gave the defendant, *Reding*, a bond, conditioned for the conveyance of the *locus in quo*, on payment of two certain notes of hand given for the purchase money. *Reding* entered into possession, though, as *Black* testified, he gave him no permission so to do, but it was with his knowledge.

In 1825, *Reding* gave one *Charles McLean* a bond, conditioned for the conveyance of the same land to him *or his assigns*,

on payment, according to their tenor, of eight notes of hand, payable in equal annual payments from the day of the purchase — the bond also providing, that *McLean*, his heirs and assigns, might enter into the possession of the land and take the rents and profits to his and their use. *McLean* lived upon the land until 1827, when he assigned *Reding's* bond to the plaintiff, and sold him all his "claims and possession," of the lot in question. The plaintiff entered the same year, erected a house upon the land, moved his family thereon, and continued to occupy it till the time of the alleged trespass in *August*, 1832. At that time, *Reding* had not paid his notes to *Black*, and had received no deed from him ; nor had he a legal claim for one. Nor had *McLean* paid his notes to *Reding* according to their tenor, or the plaintiff his to *McLean*.

In the summer of 1832, *Reding* put the other defendant, *Crosby*, into a part of the house, while *Moshier* himself was absent at *Mirimachi*, his family still continuing to occupy the other part of the house. *Crosby*, under the direction of *Reding*, cut the grass, and this was the act complained of in this action.

After the commencement of the action, which was *August* 29*th*, 1832, *Reding* paid his notes to *Black* and received a deed from him of the *locus in quo*, dated *March* 7*th*, 1833.

The presiding Judge instructed the jury, that if they should find that the defendants entered and took possession by the consent of *Moshier*, or his wife, then their verdict should be for the defendants. But if no such consent was given, and the entry and acts done, were forcible and against the will of *Moshier*, or his wife, their verdict should be for the plaintiff.

The jury returned a verdict for the plaintiff, and the defendant's counsel thereupon filed his exceptions to the foregoing instructions, agreeable to the statute.

*Chase*, for the defendant, argued in support of the following positions : 1. A lessee can never dispute the lessor's title until he deliver possession ; or, unless there has been fraud in the lessor ; or the lessor's title had expired.

2. There is no difference in the operation of the law of estop-

pel whether the tenant enters under a lease or an agreement to purchase.

3. Where the lessee or tenant is estopped to controvert the landlord's title, all claiming under him are equally estopped.

4. Notice to quit is unnecessary where the entry is under an agreement to purchase.

*Jackson* v. *Dyer*, 14 *Johns.* 224 ; *Jackson* v. *Croy*, 12 *Johns.* 427 ; *Jackson* v. *McLeod*, 12 *Johns.* 182 ; *Jackson* v. *Creal*, 13 *Johns.* 116 ; *Jackson* v. *Hardner*, 4 *Johns.* 203 ; *Jackson* v. *Stuart*, 6 *Johns.* 34 ; *Smith* v. *Stewart*, 6 *Johns.* 46 ; *Jackson* v. *Vosburg*, 7 *Johns.* 187 ; *Jackson* v. *De Watz*, 7 *Johns.* 157 ; *Jackson* v. *Jones*, 9 *Cowen*, 182 ; *Brant* v. *Livermore*, 10 *Johns.* 358 ; *Jackson* v. *Whitford*, 2 *Caines' Rep.* 215 ; *Barwick* v. *Thompson*, 7 *T. R.* 488 ; *Fletcher* v. *McFarland*, 12 *Mass.* 43 ; *Jackson* v. *Wilson*, 9 *Johns.* 92 ; *Jackson* v. *Dobbin*, 3 *Johns.* 223 ; *Jackson* v. *Davis*, 5 *Cowen*, 123 : *Schauber* v. *Jackson*, 2 *Wend.* 62 ; *Beaver* v. *Delahon*, 1 *H. Black.* 8 ; *Watertown* v. *White*, 13 *Mass.* 481 ; 2 *Stark. Ev.* 533, (*note h. & k.*) *Miller* v. *McBryall*, 14 *Serg. & Rawle*, 382 ; *Bowker* v. *Walker*, 1 *Vermont Rep.* 18 ; *Tuttle* v. *Reynolds*, 1 *Vermont Rep.* 80 ; *Rowan* v. *Little*, 11 *Wend.* 616 ; *Whitside* v. *Jackson*, 1 *Wend.* 418 ; *Jackson* v. *Miller*, 7 *Cowen*, 747 ; *Jackson* v. *Rowland*, 6 *Wend*, 666 ; *Jackson* v. *Miller*, 6 *Wend.* 228 ; *Jackson* v. *Smith*, 7 *Cowen*, 717 ; *Tillinghast's Adams on Ejectmen*, 247 ; *Binney* v. *Chapman*, 5 *Pick.* 124.

*McLean*, was in under *Reding*, and was therefore estopped to deny his title. *Moshier* claiming under *McLean*, and well knowing of *Reding's* title, is equally estopped. The possession of *Reding*, if not by deed, was by the tacit consent at least of *Black*, and this equitable title is sufficient at least against *McLean & Moshier*. Besides, it is contended that the deed of *Black*, had relation back to the time of the agreement to purchase and entry under that agreement.

*J. Granger*, argued for the plaintiff, citing the following authorities : *Com. Dig. Trespass, B.* 1 ; *Hammond's N. P.* 153 ; 2 *Wheaton's Selwyn*, 1018 ; *Suffring* v. *Townsend*, 9 *Johns.* 35 ; *Proprietors, &c.* v. *McFarland*, 12 *Mass.* 324 ; *Shaw* v. *Wise*,

Moshier *v.* Reding & al.

1 *Fairf.* 113 ; *Adams on Ejectment,* 247 ; *Morgan* v. *Paul,* 17 *Com. Law Rep.* 303 ; *Coffin* v. *Lunt,* 2 *Pick.* 70 ; 1 *Esp. Dig.* 268 ; 1 *Cruise,* 281 ; 1 *East,* 245 ; 1 *Taunt,* 322 ; 2 *Saund. on Pl.* 866 ; *Smith* v. *Stewart,* 6 *Johns,* 46 ; *Jackson* v. *Davis,* 5 *Cowen,* 123.

The opinion of the Court was delivered by

Parris J. — The plaintiff, having proved that he had occupied the farm where the trespass is alleged to have been committed, for a number of years, had erected a house thereon where he dwelt with his family, and that he had never abandoned the possession, was entitled to continue his occupation unmolested by the defendant, unless the latter could show some superior claim or title thereto. He did show that he was an earlier occupant, that he entered upon the premises in 1824, and continued to improve them until he contracted to sell to *McLean,* and then permitted him to enter and occupy. We do not deem it material to discuss the defendant's rights to possession, &c. under his contract with *Black.* If *Reding* had taken possession of the land without the assent or knowledge of the true owner, such possession could not lawfully be disturbed by a stranger, as he could not justify his interruption of *Reding's* possession by calling in aid *Black's* title.

Where a landlord shows no title, but asks to be restored to the possession with which he parted, good faith requires it should be delivered to him, it being no answer to say he is not the owner of the land. *Miller* v. *McBrier,* 14 *Serg. & Rawle,* 385.

A defendant is estopped from contesting the title under which he entered in any manner as against his landlord. He must first restore the possession which he obtained from his landlord, and then, as plaintiff, he may avail himself of any title which he has been or may be able to acquire. *Jackson* v. *Harper,* 5 *Wend.* 246.

Although the possession of the lessor be merely tortious, as if he be a disseisor, such possession will enable him to make a lease which will be good against every man except the disseisee. *Comyn's, Landlord & Tenant,* 17. *Reding* being in actual pos-

session on the 26th of *May*, 1825, contracted, by bond, to sell to *McLean*, and to give him a deed of the premises upon his paying eight hundred dollars in eight equal annual payments. *Reding*, also, by the bond, expressly contracted to permit *McLean*, his heirs and assigns, in the mean time, peaceably and quietly to hold, occupy and enjoy the premises, and to receive and take to their own use the rents and profits thereof.

The last of the notes described in the bond did not become payable until *May*, 1833.

Is *McLean* to be considered as lessee of the premises ? It has been holden that express words of demise or reservation of rent are not essential, it being sufficient if it appear to have been the intention of the lessor to dispossess himself of the premises, and of the lessee to enter pursuant to the agreement. *Miller* v. *McBrier*, before cited. Whatever words, says *Ch. Baron Gilbert*, are sufficient to explain the intent of the parties, that the one shall divest himself of the possession and the other come into it for such a determinate time, whether they run in the form of a license, covenant or agreement, are of themselves sufficient, and will, in construction of law amount to a lease for years as effectually as if the most proper and pertinent words had been made use of for that purpose. *Bac. Abr. Leases, K.* To constitute a good lease it need only appear to be the intention of the lessor on the one hand to dispossess himself of the tenements in favor of the lessee by the very making of the lease ; — and of the lessee on the other hand to enter and be possessed pursuant to the lessor's consent. *Comyn on Landlord and Tenant*, 59. There can be no doubt that the intention of the parties was for *McLean* to have the occupancy of the premises, at least, until the first note became payable and for such further time as he continued punctually to pay the notes as they severally arrived at maturity. — Suppose it to have been a lease for a year only, and that on the 26th of *May*, 1826, the lessee's term would have expired by effluxion of time. Notice to quit, at that time would not be necessary in order to dissolve the relation of landlord and tenant. *Cobb* v. *Stokes*, 8 *East*, 358. And the landlord might enter immediately after the expiration of the lease, and the plea of *liberum tenementum* would be a good justification to an action

of *quare clausum* by the tenant for such entry. *Sampson* v. *Henry*, 13 *Pick.* 36; *Taylor* v. *Cole*, 3 *T. R.* 294; 4 *Kent's Com.* 112.

But where the tenant holds over, after his term has expired, and the lessor assents to it (and even his silence may be construed into an acquiescence or assent) it will be considered as a tacit renewal of the lease, at least for the following year, and the lessee will become tenant from year to year, and cannot be dispossessed without regular notice. In this the civil and common law both concur. 4 *Kent's Com.* 110, 114. If the lessor receive rent, or the lessee be permitted to continue on the land for a twelve month, a tenancy from year to year will then be implied. *Doe* v. *Stennett*, 2 *Esp. N. P. Cas.* 716. If *Reding* had a right to enter immediately on the failure to pay the first note when it became payable, if the term under the bond then expired, his conduct in retaining the notes and acquiescing in the tenant's possession would amount to a renewal of the lease, and consequently *McLean* became tenant from year to year, commencing on the 26th of *May*, 1826, and the tenancy, or relation of landlord and tenant could not thereafter be regularly determined, but by notice to quit. If, on the other hand, the permission given by *Reding* to *McLean* in the bond, to occupy the premises, extended to the time when the last note became payable, then it follows that the term had not expired when the defendant committed the acts complained of as a trespass, and he had no right to enter either with or without notice. This is the view we take of the case if the permission to occupy, given in the bond, is to be construed as a lease.

The counsel for the defendant relies upon several cases in *New York.* The strongest case cited by him, is *Jackson* v. *Miller.*

There the agreement that the purchaser might take possession was by parol, and he was consequently a mere tenant at will, and *Chancellor Kent* says, a strict tenant at will, in the primary sense of that tenancy, is not entitled to notice to quit. 4 *Kent*, 112.

In *Jackson* v. *Miller*, *Ch. Just. Savage* reviews the cases bearing upon the question under consideration. Some of them

are questions between mortgagee and mortgagor where there is a broad distinction, the mortgagor being, at most, a *quasi* tenant at will, or rather tenant by sufferance. In others, the permission to occupy was by parol, and in some as in *Jackson* v. *Niven*, 10 *Johns.* 335, where the contract was under seal, notice was holden to be necessary.

The Chief Justice admits that there is some confusion in the books on this question ; — that whether notice shall be given or not is mere matter of practice, and it seems reasonable that it should be given in all cases where the tenant occupies with the permission of the landlord for an indefinite period, and does no act hostile to the landlord, but he says the case of a contract to sell seems to have been uniformly considered an exception.

We admit that there may be cases where no notice would be necessary, as in this, if *Reding* had not, by his acquiescence, permitted *Moshier* to assume the character of tenant from year to year. But where there is an agreement by deed, that for a stipulated consideration the obligee may enter and quietly enjoy certain real estate, and receive and take to his own use the rents and profits thereof, the general rule laid down by *Chief Baron Gilbert*, will readily determine the character of the tenancy.

The counsel for the defendant necessarily treats it as a lease, contending that *Moshier*, as lessee, is estopped to deny his landlord's title. Unless *Reding* can thus shut out inquiry into his title he falls at once, as the case shows beyond controversy that at the time of the alleged trespass he had no title whatever derived from the owner of the fee. The case of *Right, on the demise of Lewis* v. *Beard*, 13 *East*, 210, is direct as to the necessity of notice. *Lewis* put the defendant into possession of a parcel of land under an agreement to purchase. On ejectment to recover possession, the defendant contended that he was the legal tenant, and that until demand and refusal of the possession, he was not a trespasser. On the other hand, it was said that the defendant had taken possession under a supposed title, and, therefore, not as tenant. *Lawrence J.* before whom the action was tried, held, that the defendant's possession being lawful, required to be determined by notice to deliver it up. The case went before the *King's Bench*, and *Lord Ellenborough*, in giving the opinion of

the court, said, that after *Lewis* had put the defendant into possession, he could not, without a demand of the possession again and a refusal by the defendant, or some wrongful act by him to determine his lawful possession, treat him as a wrongdoer and a trespasser ; — and on this authority the court in *New York* rely in a similar decision in *Jackson* v. *Niven*, 10 *Johns*. 335.

*Comyn*, in his treatise on *landlord* and *tenant*, before referred to, says, where a sale of lands is agreed upon and the owner of the lands puts the intended vendee into possession, he cannot oust him without a notice to quit, or at least, a demand of the possession. *Comyn*, 291. So where an agreement was made between A. and B. that A. should sell certain premises to B. if it turned out that A. had a title to them, and that B. should have the possession from the date of the agreement, it was held that A. could not eject B. without a demand of possession, and the court was of opinion that the service of a declaration in ejectment was not equivalent to a demand, because an ejectment treats the party in possession as a wrongdoer ; and in this case the defendant had entered with the license of the plaintiff. *Comyn*, 291 ; *Doe* v. *Jackson*, 1 *Barnew & Cresw*. 448. In *Denn, on the demise of Mackey* v. *Mackey*, 1*st Pennington*, 420, the defendant entered land with the permission of the owner in his lifetime, made improvements and remained there a number of years without any reservation of rent. It was held that the heir of the owner must give the tenant notice to quit, before bringing ejectment. The same principle is recognised in *Jackson* v. *Bryan*, 3 *Johns*. 322, where no rent was reserved and *Spencer, J.* said *that* is not an indespensible criterion of a tenancy.

The entry by the defendant was in midsummer, while all the crops were on the ground, and when the tenant had reason to suppose that he should have been permitted to reap where he had been permitted to sow. There is nothing in the case that shows that *Reding* had objected to the tenant's continuing in possession or that he had called for payment of the notes, one of which had not become payable, or given any intimation that he should enter and take possession. The tenant having been permitted thus quietly to remain from year to year under the contract, we think there was an implied assent that he might continue through the

year which had partly expired ; at least that he should not be entered upon and thrust out, or interrupted in his possession until after seasonable notice.    As said by *Tilghman C. J.* in *Bedford* v. *McElherron*, 2 *Serg. & Rawle*, 49, it might fairly be presumed that the tenant retained that possession with the consent of *Reding*, and was consequently entitled to notice to quit.

By the terms of the deed, *McLean* was authorised to assign, and he did so assign to the defendant in *March*, 1829, for the consideration of two hundred dollars, whereupon *Moshier* entered, and if, as contended by the defendant, the relation of landlord and tenant existed between *Reding* and *McLean*, previous to the assignment, it attached to *Moshier*, immediately on his entry.    He was in of the same estate as *McLean*, and *Reding* acquired the same rights against him as assignee, by reason of the privity of estate that he had against *McLean* upon his covenants in law previous to the assignment.  If *McLean* would be entitled to notice so would *Moshier*, and whether they are to be considered as lessees or not, we think they were so in by the permission of *Reding*, that he had no right to enter upon them without notice, at the time and in the manner he did.