## BIRMINGHAM vs. THE EMPIRE INSURANCE COMPANY.

The conditions annexed to a policy of insurance, and forming a part thereof, required that applications for insurance should specify the nature of the applicant's title, if less than fee simple; and that any misstatement or concealment relative to this and other requirements should render the insurance void. B., in an application for insurance, represented that he owned the property by virtue of an article of agreement with C. The agreement, as proved, was for the sale of a village lot by C. to B., without any exception or reservation, for a specified sum to be paid by B. The dwelling house was on the lot at the date of the agreement, and when the insurance was applied for. There was no proof that B. represented, in his application, that he owned the dwelling house as a chattel not affixed to the soil.

*Held,* that the contract of insurance related solely to the interest which B. had in the building, as the vendee in possession of the soil on which it stood, under the contract with C.; and that the judge, on the trial, properly overruled B.'s offer to prove that the building was a chattel not affixed to the freehold, and that at the time of the insurance he was the owner of it, and continued to be the owner up to the time of the fire.

*Held, also,* that the statement in the application, respecting the nature of B.'s title, was a warranty; and it being untrue, the policy did not take effect. That the insurers did not insure the building as a chattel.

That the agreement of the parties precluded all inquiry as to whether B. had any other insurable interest than that warranted; or as to whether the thing warranted was material to the risk.

Where a party states, in his application for insurance, that he is the owner of the property, by virtue of an article of agreement with another, he cannot be allowed to show, in an action on the policy, that at the time of making the application, he told the agent of the insurer that he owned the building, having purchased it before he took the contract for the land; it being an offer to contradict the written application, by parol.

By articles of agreement between C. and B., dated March 1, 1860, C. agreed to sell a lot of land to B., for the sum of $175 payable in ten equal annual payments, with interest, and that on such payments being made, she would execute a deed to B. The contract provided that if B. should fail to perform, C. should have the right to declare the contract void, and might consider and treat B. as a tenant holding over without permission, and might take possession of the premises and remove B. therefrom. In September, 1861, B. having made default, C. notified him to surrender the possession of the premises. In October, 1861, B. complied with the demand, and voluntarily removed from the premises. *Held* that these proceedings terminated B.'s insurable interest in the building, under the contract, and the contract became void.

THIS was an action upon a policy of insurance for $80, on a dwelling house in the village of Canandaigua, issued by the defendant. The complaint alleged the issuing and delivery of the policy to the plaintiff on the 20th of August, 1860, and that he had an insurable interest in the property, at the time of the insurance, and at the time of the fire, as owner of the same. It also alleged the destruction of the house by fire, on the 27th of October, 1861, at which time the same was of the value of $110, and that notice of the loss was given to the defendant, with the usual preliminary proofs. The answer of the defendant contained a general denial of the allegations in the complaint. It also alleged that the plaintiff permitted the premises to remain unoccupied, by himself or a suitable tenant, previous to and at the time of the fire, in violation of his policy. Also that the fire occurred through the carelessness and misconduct of the plaintiff or his agents; and that at the time of the fire the plaintiff was not the owner of the premises, and had no insurable interest therein. At the trial the issuing and delivery of the policy were proved, and the same was read in evidence, with the conditions of insurance, annexed thereto. At the close of the testimony the judge directed the jury to find for the defendant, on the ground of an absence of insurable interest in the plaintiff at the time of the fire; and they found accordingly. Leave was given to the plaintiff to make a case and bill of exceptions, to be heard at the general term, in the first instance.

*Morse & Wells,* for the plaintiff.

*Edw. Hicks,* for the defendant.

*By the Court,* JAMES C. SMITH, J.   The conditions annexed to the policy of insurance, and, by its terms, forming a part thereof, require that applications for insurance " shall be made according to the printed forms of the company,"

and shall specify, among other things, "the nature of the applicant's title, if less than fee simple ;" and they also provide "that any misstatement or concealment relative to any of the foregoing requirements ⁂ ⁂ ⁂ shall render the insurance void." The plaintiff, in his written application for insurance, which was in the requisite form, represented that he owned the property which he proposed to have insured, by virtue of an article of agreement with Eliza C. Chapin. The agreement, which was given in evidence, was for the sale by Miss Chapin to the plaintiff, of a certain village lot in Canandaigua, therein described by metes and bounds, without any exception or reservation, for a certain sum of money therein specified, to be paid by the plaintiff. The dwelling house, the subsequent destruction of which by fire has given rise to this action, was on the lot when the agreement of sale was entered into, and also when the insurance was applied for and effected. There is no evidence that the plaintiff represented, in his application, that he owned the dwelling house as a chattel not affixed to the soil. Upon this state of facts I am of opinion that the contract of insurance related solely to the interest which the applicant had in the building, as the vendee in possession of the soil on which it stood, under the subsisting executory contract referred to, and that the court below properly overruled the plaintiff's offer to prove that "the building in question was a chattel not affixed to the freehold, and that at the time of the insurance he was the owner of it, and continued to be the owner up to the time of the fire." The statement in the application, respecting the nature of the plaintiff's title, was a warranty, and it being untrue, the policy did not take effect. The defendants did not insure the building as a chattel. The agreement of the parties precludes all inquiry as to whether the plaintiff had any other insurable interest than that warranted ; or as to whether the thing warranted was material to the risk. (*Burritt* v. *The Saratoga County Mutual Fire Insurance Company,* 5 *Hill,* 188.)

The ruling may also be sustained on the ground, that as the insured was called upon by the insurers to communicate the nature of his interest in the property, he was bound to state it accurately and fully; (1 *Smith's Lead. Cas.* 637–8, *and cases cited;*) especially in view of the condition above referred to, that any misstatement or concealment relative to any of the requirements in said condition should avoid the insurance. (*Id.* 641, 2, *and cases cited.*)

The court also properly overruled the plaintiff's offer to show that at the time of the application he told the defendant's agent that Miss Chapin did not own the building, but that he, the plaintiff, did, and had purchased it before he took the contract for the land. It was an offer to contradict by parol the clear and explicit statement in the written application, respecting the plaintiff's title. (*Jennings* v. *The Chenango County Mutual Insurance Co.,* 2 *Denio,* 75, *and cases cited by Jewett, J.*)

The only remaining question is whether at the time of the fire, the plaintiff had an insurable interest in the building, under the contract with Miss Chapin. The contract provided that the plaintiff was to pay, for the lot, the sum of $175, in ten equal annual payments, with interest to be computed from 1st March, 1860, and that on such payments being made, in full, to the vendor, she was to execute a deed. The vendee was to have immediate possession of the premises. The contract further provided that if the vendee should fail to perform the contract, or any part thereof, the vendor, immediately after such failure, should have the right to declare the same void, and retain whatever had been paid thereon, and all improvements that had been made on the premises, and might consider and treat the vendee as her tenant holding over without permission, and might take immediate possession of the premises and remove the vendee therefrom. It was proved that in September, 1861, the plaintiff having paid nothing, the vendor notified him to surrender possession of the house and lot, and that in Octo-

ber of that year the plaintiff complied with the demand, and voluntarily removed from the premises. Some testimony was given, on his part, tending to show that a few articles of personal property belonging to him remained in the house till it was burned, but he did not claim, on the trial, that there was any question of fact respecting the surrender of possession, to be submitted to the jury. The arrangement above stated terminated his insurable interest in the building, under the contract. The contract became utterly void, and no action for a specific performance, or for the recovery of damages, could be maintained upon it, by either party.

As the interest of the plaintiff, in the premises, was thus terminated, independently of the legal proceedings to dispossess him, it is unnecessary to inquire whether those proceedings were valid.

Some other questions, of less importance, are raised by the exceptions in the case, but it seems to me obvious that they were correctly decided.

The defendant is entitled to judgment on the verdict.

Ordered accordingly.

