## HINMAN VS. THE HARTFORD FIRE INSURANCE COMPANY.

INSURANCE AGAINST FIRE: MISREPRESENTATION OF TITLE. (1) *Construction of stipulations in policy as to matters affecting the risk.* (2–4) *Rule applied to stipulation as to statement of ownership.* (5, 6) *Insurer not estopped by certain acts of local agent.* (7) *Entire contract; misrepresentation affecting only a part of the property.*
NONSUIT AND NEW TRIAL. (8) *Improperly refused.*

1. In contracts of insurance against fire, stipulations of the assured as to matters existing prior to the loss and which *affect the risk itself* (including stipulations as to the *ownership of the property*), are more strictly enforced in favor of the insurer than those which relate to the mode in which a loss, after it has occurred, is to be established, adjusted and recovered.
2. The policy here sued on makes special reference to the application of the assured, as " his warranty " and a part of such policy, and it provides that if the assured, in his application, makes any erroneous representations, or omits to make known any fact material to the risk, or if he is not the sole and unconditional owner of the property insured, or (if said property be a building) of the land on which such building stands, " by a sole, unconditional and entire ownership and title, and [it] is not so expressed in the written portion of the policy," then the policy shall be void. *Held,* that the rights of the parties to this contract must be determined by the general rules of law applicable to the construction and enforcement of all written agreements.

3. In the written application of the assured in this case, he stated, in an-swer to direct interrogatories, that the property (a hop house and con-tents) was not mortgaged, and that he was the sole and undisputed owner thereof; and, in answer to the question whether he owned the ground on which the building stood, and, if not, how it was held, he said, " By contract." It appears that the building was a part of the realty; that his only title to the land was by virtue of a contract for the sale and purchase of it, entered into about five and a half years before, by the terms of which he was to pay nearly $1,600 in five an-nual installments, and all taxes accruing, and was to hold the land as tenant by sufferance of the other party, "subject to be removed as a tenant holding over," whenever default should be made in the pay-ment of any of said installments; and there was a further provision that on his failure to make any payment of purchase money as speci-fied, the agreement should be utterly void and all payments forfeited, at the option of the vendor. When the application and policy were made, the assured had paid only $200 of the purchase money, and was in default of the remainder with interest. *Held,*

(1.) That knowledge of the true character of the interest of the as-sured in the property was material to the insurer in ascertaining the nature of the risk.

(2.) That the aforesaid answers, taken together, were equivalent to a statement that although the assured held the land and building under a contract of purchase, yet no person other than himself had any substantial interest in them — that he had fully paid for the land, and was the real owner by an equitable title in fee, with the right to enforce a conveyance to himself of the legal title; and such misrep-resentation *rendered the policy void.*

4. At the time of the application, there were also outstanding certificates of the sale of the land for taxes for three successive years. Without determining the effect of these upon the contract of insurance in this case, the court intimates that when real estate proposed to be insured is incumbered by unpaid taxes or certificates of tax sales, if the terms of the contract of insurance require the assured to disclose the par-ticulars of his title, the safe course will be for him to state in his ap-plication all the facts relating thereto.

5. The assured testifies that when he applied for the insurance, the local agent of the insurer asked him who built the hop house, and, on being told that the witness built it, replied, "Then you own the property, and have the right to get it insured." The uncontradicted testimony of the agent was, that he had no knowledge whatever that there was *any incumbrance* on the property. *Held,* that there was nothing in the evidence to show that the agent, with knowledge that the assured

Hinman vs. The Hartford Fire Insurance Company.

had not paid the purchase money for the land, advised him that he could safely declare and warrant that he was the sole and undisputed owner of the building; and the assured must be held to have made that statement on his own responsibility.

6. The question how far the principal will be concluded in such cases by the knowledge and acts of the agent, is therefore not presented in this case.

7. Personal property in said building, which was covered by the policy, and of which the assured was sole and absolute owner, was also destroyed by fire. *Held*, that plaintiff could not recover the value of such personal property, the contract of insurance being *entire*.

8. When plaintiff's evidence was all in, the material facts above stated being then proven, a nonsuit should have been ordered on defendant's motion. This having been denied, the court, after verdict for the plaintiff, erred in refusing a new trial.

APPEAL from the Circuit Court for *Columbia* County.

The action is on a policy issued by the defendant insurance company to one Joseph L. Pickard, insuring him against loss or damage by fire to his hop house and certain personal property therein. The insurance dated from August 22, 1871, and was for one month. On the 28th day of the same month the property was destroyed by fire. After the loss, Pickard assigned his claim on account thereof to the plaintiff, who brought this action, and recovered judgment for the value of the property destroyed.

It was proved on the trial that Pickard made and signed an application in writing to the defendant for such insurance, in which are the following interrogatories, and the answers of Pickard thereto: "Q. Is the property mortgaged? Ans. No. Q. Are you the sole and undisputed owner of the property to be insured? Ans. Yes. Q. Do you own the ground on which the building stands? If not, how is it held? Ans. By contract."

The policy of insurance issued by the defendant pursuant to such application, contains the following provisions: "Special reference being had to the application of the assured, No. 948, which is his warranty, and a part hereof. * * * * If the

assured, in a written or verbal application, makes any erroneous representations, or omits to make known any fact material to the risk, * * * * or if the assured is not the sole and unconditional owner of the property insured, or (if said property be a building or buildings) of the land on which such building or buildings stand, by a sole, unconditional and entire ownership and title, and is not so expressed in the written portion of the policy, * * * * then, and in every such case, this policy shall be void. * * * * This policy is made and accepted upon the above express conditions."

The only title to or interest in the land on which the hop house stood, which Pickard had when he obtained the insurance, was by virtue of a contract or agreement between himself and one Gates, the owner, for the purchase thereof. That agreement bears date January 1, 1866, and is to the effect that Pickard (party of the second part) agrees to pay Gates (party of the first part) the sum of $1,578.50 in installments, the last of which became due January 1, 1870, for about forty-five acres of land, and to pay all taxes thereon. Gates agreed to convey the land to Pickard in case such payments were made at the times specified in the agreement. Pickard covenanted therein to hold said premises, from the date of the agreement, "as tenant by sufferance of said party of the first part, subject to be removed as a tenant holding over, by process under the statutes in such case made and provided, whenever default shall be made in the payment of any of the installments of purchase money above specified." It is also stipulated in the agreement that, "if the party of the second part shall fail to make any of the payments of purchase money above specified, in such case this agreement shall be utterly void, and all payments thereon forfeited, subject only to be revived and renewed by the act of the party of the first part, or the mutual agreement of both parties." The hop house mentioned in the policy was erected by Pickard on the land described in such agreement. Pickard only claims to have paid two hundred dollars

to Gates on account of the land, and it appears that he was in default for nonpayment of the balance of the purchase money and interest when the policy was issued. Further, he paid no taxes on the land after 1867, and the land was duly sold for the taxes of 1868, 1869 and 1870, and the certificates of such sales were outstanding at the date of the policy.

It also appears by the evidence that the agent of the defendant who received the application for insurance, knew that the latter held the land under a contract with Gates, but that he did not know the land was incumbered or that the taxes thereon had not all been paid.

The plaintiff had a verdict; a new trial was denied; and defendant appealed from a judgment on the verdict.

*J. W. Lusk*, for appellant:

1. The court erred in refusing the instructions asked by the defendant (1 Phill. Ins., §§ 530, 531 and 635; *N. Y. Bowery Ins. Co. v. N. Y. Fire Ins. Co.*, 17 Wend., 367–8; *Burritt v. Sara-toga Mut. Ins. Co.*, 5 Hill, 193); and especially in refusing the fifth instruction, which was, in substance, that if the assured had suffered the land to be sold for taxes for three years immediately preceding the application for insurance, it was a fact material to the risk, etc. *Burritt v. Saratoga Ins. Co.*, above cited; 1 Phill. Ins., § 537. 2. The court erred in refusing the nonsuit, on the ground that the statements of the insured, as to his title to the property, were untrue.

*Park & Jones*, for respondent:

1. The evidence showed that the agent had knowledge as to the title of the insured to the property. This knowledge of the agent is to be treated as that of the company. May on Ins., 132 and 156; 25 Wis., 306; 36 N. Y., 550. 2. The appellant is estopped by the declaration of its agent, who told the insured that he had a right to get the property insured. The company should be held bound by this declaration of its agent. Parsons on Con., 793; 36 N. Y., 550; 13 Wall., 222; 22 Mich., 473; 55 Ill., 213; May on Ins., § 141; id., § 501; 37 N. H.,

48; 27 Wis., 693. 3. The insured had an interest in the property by contract of purchase, and, whether legal or equitable, his interest was insurable. 3 Kent, 468; 2 Parsons on Con., 438.

LYON, J. In the contract under consideration, as in all, or nearly all, modern contracts of insurance, there are two classes of stipulations: *first*, those relating to matters and things prior to the loss, and which define and determine the limits of the risk; and *second*, those which relate to matters and things occurring after the loss, and having for their object to determine the mode in which the loss is to be established, adjusted and recovered. The former pertain to the circumstances which affect the risk itself, the latter to those acts required of the assured after a loss in order to fix the liability of the insurer. "As to the former" (says Mr. May in his excellent work on the Law of Insurance, § 217), "relatively speaking there is more strictness in holding parties to the terms of the contract, and less readiness to find in the circumstances a waiver of their respective rights. In other words, the courts will proceed with caution in determining the question of the liability of the insurer; but when this liability is fixed by the capital fact of a loss within the range of their responsibility, they will be very reluctant to deprive the insured of the benefit of that liability, by any failure or neglect to comply with the mere formal requisitions of the contract, by which his right is to be made available for his indemnification." p. 231. The stipulations in this contract of insurance upon which the action must be determined, relate to matters and conditions not only prior to the loss, but prior also to the making of the contract, and hence belong to the first class before mentioned. In this case, therefore, the parties must be held to the terms of the contract which they have entered into, and the most that either of them can justly claim, is, that their contract shall be governed by the general rules of law applicable to the interpretation and enforcement of all written agreements.

Formerly contracts of insurance did not usually contain the numerous conditions and stipulations which are found in later insurance contracts, or in most of them, and which are designed to operate as restrictions upon the liability of the insurer. These are, in a great measure, of modern growth, and are the natural results of the vast increase of the business of insurance. At the time when the assured was not usually required fully to disclose the nature and extent of his interest in the insured property, and when the policy contained no conditions in respect to the title, the question frequently arose in the courts as to how far, and how specifically, he was bound to disclose his title and interest. It was then held in numerous cases (although the contrary doctrine was asserted by some of the courts, and particularly by the supreme court of the United States), that, in the absence of such requirement or conditions, if the assured had not the absolute title to the property insured, but had an insurable interest therein, the insurer was liable on the policy for a loss of the property, although the assured had represented that he was the owner and had failed to disclose that his interest therein was only a partial or limited interest. Many of these cases are cited in the note to the case of *Locke v. The N. Am. Ins. Co.*, 13 Mass., 61, in 2 Am. L. Cas., 476 (2d ed.).

In many of these cases (and so far as we have discovered, in all of them in which the subject is mentioned), and in numerous other cases, the principle is asserted, that if the assured is interrogated for the character and particulars of his title, or if he be required by the provisions of the policy to disclose the same, he must disclose his title fully and correctly, or the insurer will be relieved from liability on the policy.

The character and extent of the interest of the assured in the insured property is an important element in the risk. In *Columbian Ins. Co. v. Lawrence*, 2 Peters, 25, Chief Justice MARSHALL says: "Generally speaking, insurances against fire are made in the confidence that the assured will use all the precautions to guard against the calamity insured against, which

would be suggested by his interest. The extent of this interest must always influence the underwriter in taking or rejecting the risk and in estimating the premium. So far as it may influence him in these respects, it ought to be communicated to him. Underwriters do not rely so much upon the *principles* as on the *interest* of the assured ; and it would seem, therefore, to be always material that they should know how far this interest is engaged in guarding the property from loss." p. 49.

If the contract requires the assured fully to disclose his title, and he fails in any material particular to do so correctly, it is highly probable, in view of the importance of such information to the insurer, that the policy would thereby be invalidated and the insurer relieved from liability, although it contains no express provision to that effect. But this question is not in the present case. In the contract before us there are express conditions and stipulations, valid in the law, and amply sufficient to charge the plaintiff with the obligation fully to disclose to the insurer his title to the insured building and the ground on which it stood, at the peril of losing the benefit of the contract should he fail to do so.

As before observed, the cases which assert and apply the foregoing principles are very numerous. For the convenience of the profession, a few of them, taken almost at random, will be here cited. *Franklin Fire Ins. Co. v. Coates*, 14 Md., 285 ; *Sussex County Mut. Ins. Co. v. Woodruff*, 2 Dutcher (N. J.), (541), 553 ; *Ætna Ins. Co. v. Tyler*, 12 Wend., 507 ; *Same case* in court of errors, 16 id., 385 ; *Strong v. Manufacturers' Ins. Co.*, 10 Pick., 40 ; *Curry v. Commonwealth Ins. Co.*, id., 535 ; *Smith v. Bowditch Ins. Co.*, 6 Cush., 448 ; *Hayward v. N. E. Mut. Ins. Co.*, 10 id., 444 ; *Brown v. Williams*, 28 Me., 252 ; *Birmingham v. Empire Ins. Co.*, 42 Barb., 457 ; *Marshall v. Columbian Ins. Co.*, 7 Foster (N. H.), 157 ; *Jenkins v. Quincy Ins. Co.*, 7 Gray, 370 ; *Kibbe v. Hamilton Ins. Co.*, 11 id., 163 ; *Falis v. Conway Ins. Co.*, 7 Allen, 46 ; *Reynolds v. State Mut. Ins. Co.*, 2 Grant's Cases (Pa.), 326 ; *Phillips v. Knox Ins. Co.*, 20 Ohio, 174

Hinman vs. The Hartford Fire Insurance Company.

We are now to apply these principles to the facts of this case as established on the trial.    It satisfactorily appears that the hop house, which is the chief subject matter of the policy, was part and parcel of the realty, and Pickard had no greater interest in the building than he had in the soil upon which it stood.    It conclusively appears that he was not " the sole, unconditional owner by a sole, unconditional and entire owner- ship and title," either of the building or soil.    The words of the policy here quoted import absolute ownership and title. When the contract was made, Pickard was in possession of the property under a contract with the owner for the purchase thereof, and, doubtless, had an insurable interest in the build- ing.    But he had failed to pay the purchase money, and it was all past due.    Besides being in default as to the purchase money, he had neglected for the three preceding years to pay the taxes assessed on the property, and there were three out- standing certificates of the sale thereof for such unpaid taxes. It requires no argument to show that the sole, unconditional and entire ownership of and title to the premises were not in Pickard.    And it seems equally clear that it was very material to the insurer to be informed of the limited and precarious character of Pickard's interest in the property.    Under the express terms and conditions of the contract, we should be greatly at a loss for sound reasons for holding the policy valid and the defend- ant liable for the loss, even though Pickard had been silent as to the character and extent of his interest.    But he was not silent.    He made a declaration in that behalf, and he expessly stipulated that such declaration should be a warranty.    He de- clared and warranted that he was then the *sole* and *undisputed* owner of the insured property ; that the same was not mort- gaged ; and that he held the ground upon which the insured building stood, by contract.    His answers to the questions put to him, taken together, are equivalent to a statement that, although he held the land (and consequently the building) under a contract of purchase, yet no person, other than himself,

had any substantial interest in the property. They are equivalent to a statement, that he had fully paid for the land and was the sole owner thereof by an equitable title in fee, with the right to enforce the transfer to himself of the naked legal title outstanding in Gates, the former owner, or in his heirs or personal representatives. (See *Winslow v. Crowell,* 32 Wis., 648.) Such statement was untrue. Gates, or his heirs or representatives, had an interest in the premises to the amount of the unpaid purchase money, and was or were then entitled to a strict foreclosure of the contract under which Pickard held. This alone is fatal to the validity of the policy. We purposely avoid passing upon the effect of the outstanding tax sale certificates ; but it is deemed proper to say, that when real estate, proposed to be insured, is incumbered by unpaid taxes or tax certificates, if the terms of the contract require the assured to disclose the particulars of his title, the safer course will be for him to state in his application all of the facts relating thereto.

It is readily conceded that there are adjudged cases which seem to controvert some of the views above expressed. We shall not stop to comment upon, or even to cite them. We are well satisfied, after most careful examination, that our conclusions are sustained by the great weight of judicial authority, and that we have interpreted this contract of insurance in strict accordance with those general rules of construction applicable thereto, of which mention was made in the opening paragraph of this opinion.

It is claimed on behalf of the plaintiff, that the proofs in the case are, that the agent of the defendant who received Pickard's application for insurance, knew the state of the title and misled Pickard as to his obligation to make any further or other statement of his title and ownership than that which he did make. And it is argued therefrom, that the insurer is estopped to question the sufficiency of the title, or of the statement of Pickard in relation thereto. Were this proposition of

fact true, a very important question might be presented as to how far the principal is concluded by the knowledge and acts of the agent. But the proposition is not sustained by the proofs. The only testimony on the subject is that of Pickard, to the effect that the agent asked him who built the hop house, and, on being told that the witness built it, replied, "Then you own the property, and have the right to get it insured;" and the testimony of the agent (which is undisputed) that he had no knowledge whatever that there was any incumbrance on the property. This testimony is entirely insufficient to prove that the agent knew that Pickard had not paid for the land. The fair inference to be drawn from it is, that the agent supposed he had paid for it. Otherwise he would have known that it was incumbered to the extent of the unpaid purchase money. Certainly, there is no testimony tending to prove, that, with knowledge that Pickard had not paid the purchase money, the agent advised him that he could safely declare and warrant that he was the *sole* and *undisputed* owner of the building insured. It must be held that Pickard made such statement and declaration on his own responsibility.

Certain personal property in the building, and which was covered by the policy, was also burned. Pickard was the sole and absolute owner of such property. But the contract of insurance is entire, and, failing in part, it fails wholly. This is well settled. Hence the plaintiff cannot recover for the loss of any of the property. May on Insurance, § 189, and cases cited.

At the conclusion of the plaintiff's testimony, a motion for a nonsuit was made on behalf of the defendant, and denied by the court. All of the material facts in the case had then been proved. It follows from the views above expressed, that the motion should have been granted. But, that motion having been denied, the court should have granted a new trial for the reason that the verdict and judgment are against all of the evidence in the case. We find it unnecessary to review the

instructions given to the jury by the learned circuit judge who presided at the trial.

*By the Court.* —The judgment is reversed, and a new trial ordered.