## WARNER *against* THE MIDDLESEX MUTUAL ASSURANCE COMPANY.

Where the charter of a mutual insurance company, whereof the insured are members, provided, that no insurance effected on any property should be good and valid to the insured, unless he had a good and perfect unincumbered title thereto, at the time of effecting such insurance; and in an action on a policy issued under such charter, it appeared, that at the time it was effected, there was, outstanding, a title to the property insured, in a third person, by virtue of a mortgage of that property to him, previously executed, and never released; it was held, that the insured had not " a good and perfect unincumbered title," within the meaning of the charter, and consequently, was precluded from a recovery.

A *perfect title* imports one that is good, both at law and in equity.

The object of the provision in the 13th section of said charter, was, to guard the insurers against the necessity of proving the extinguishment of incumbrances, in order to make their lien available for the purpose of paying losses.

Where the mortgagee, in such case, declared to the plaintiff, who was about to levy an execution on the mortgaged premises, that he, the mortgagee, had no interest in the premises; it was held, 1. that if the plaintiff was thereby induced to levy his execution on the premises, the mortgagee would be estopped from making any subsequent claim to the property, as against the plaintiff, or any one claiming under him; yet 2. that a " perfect title" in the plaintiff, could not thus be created, which he could avail himself of, in a suit on the policy.

Where the only evidence of the declaration of the mortgagee above stated, and of the fact that the plaintiff's levy was induced thereby, was, that the mortgagee made such declaration in the presence of the plaintiff, a short time before he made his levy; it was held, that the evidence of estoppel was not sufficient to raise the question of its existence, and to require the submission of it to the jury.

THIS was an action on a policy of insurance on sundry

buildings in the town of *Berlin*. The declaration set out the policy, which was dated *September* 3rd, 1845, and the defendants' charter. The 13th section of the latter was in the following words :

Hartford,
June, 1852.

Warner.
*v.*
The Middle-
sex Mutual
Assurance Co.

"SEC. 13. No insurance effected on any property shall be good and valid to the insured, unless he has a good and perfect unincumbered title thereto, at the time of effecting such insurance, or unless the true title of the insured to the same, and the incumbrances, if any, be fully disclosed and expressed in the proposals for insurance, and be also specified in the policy.

The cause was tried, on the general issue, at *Hartford*, *January* term, 1852. The plaintiff claimed to recover for a loss by fire of the dwelling-house and barn described in the policy. He claimed title to those buildings and to the land upon which they were situated, by virtue of the levy of an execution, issued upon a judgment in his favour against *Eleazer Roberts* and *L. H. Case ;* such levy being made on the 3d of *June*, 1843. One acre and a half of this land, being the part upon which said buildings stood, were, with the buildings thereon, conveyed, by *Elishama Brandigee*, in fee, to said *Roberts*, by a warranty deed, dated the 7th of *August*, 1834, and by said *Roberts*, immediately thereafter, mortgaged back to said *Brandigee*, to secure four promissory notes given for the purchase money, each for the sum of 300 dollars, payable in one, two, three and four years, with annual interest. These notes were not paid until long after they became due, and the greater proportion thereof remained unpaid until the 1st of *July*, 1841, when *Brandigee* received of *Roberts* a new note for the balance, which, the plaintiff claimed, was agreed to be in full payment. The latter note was never paid by *Roberts ;* but, on the 4th of *February*, 1842, he mortgaged to *George Page* the whole of the premises so subsequently set off to him, to secure three promissory notes given by him. On the 4th of *February*, 1842, *Roberts* further mortgaged the premises to *Walter Woodworth*, to secure a note in his favour, for 1,131 dollars, payable on demand. On the 8th of *January*, 1845, *Woodworth*, by his deed of that date, released all his interest in the premises, to the plaintiff. In *March*, 1843, *Page* died, having given, by his will, to his daughter, *Almira Roberts*, all the bonds, notes

Hartford,
June, 1852.

Warner
v.
The Middle-
sex Mutual
Assurance Co.

and mortgages, which he held against her husband, *Eleazer Roberts.* On the 12th of *December*, 1849, the executors of *Page*, by their quit-claim deed of that date, released to the plaintiff their interest in the premises.

The plaintiff also claimed, that he had proved, that shortly before the levy of said execution, he, the plaintiff, called upon said *Brandigee*, and enquired of him, whether he, said *Brandigee*, claimed any interest in said premises ; to which said *Brandigee* replied, that he did not ; which, however, was also denied by the defendants ; and there was no evidence to prove, nor any claim made by the plaintiff, that if such enquiry had been made by him, or answer given by said *Brandigee*, any knowledge thereof had ever been communicated to the defendants, until long since the commencement of this suit.

On the 21st of *October*, 1848, *Elishama Brandigee* and *William H. Page*, a son and heir of *George Page*, by their deed of that date, released to the plaintiff all their interest in the premises.

The defendants claimed to the court, as matter of law, that inasmuch as the legal title of the premises, so mortgaged to said *Brandigee*, was, before and at the time of the levy of said execution, and at all times thereafter, outstanding in said *Brandigee*, until released, by his and said *William H. Page's* deed of the 21st of *October*, 1848, to the plaintiff, he, the plaintiff had not, either at the time of making said application, or of the issuing of said policy, or effecting of said insurance, or at any time, before said loss, within the meaning and true intent of the 13th section of their said charter, a good and perfect unincumbered title to the property insured, or purporting to be insured, by said policy ; and the true title of the plaintiff to said property not having been disclosed, or expressed in his said application, or specified in said policy, that the plaintiff was not entitled to recover ; and that, whether said *Brandigee* did, or did not, as claimed by the plaintiff, before the levy of said execution, inform the plaintiff, that he had no interest in said premises, could legally make no difference in the result in this case.

The court charged the jury, that as to the claim made by the defendants, that the mortgage title to the said *Brandigee, Woodworth* and *George Page*, being apparently upon

the records of the town of *Berlin*, outstanding titles and in- cumbrances, until long after said loss, and forming a cloud and incumbrance upon the title of the plaintiff to said property, by means whereof he had not a good and perfect unincumbered title to said property insured, or purporting to be insured, by said policy, at the time of the effecting of said insurance; this was no objection to a recovery.

And the court, in respect to the claim of the defendants, that, as the plaintiff had never before, or at the time of the issuing of said policy, disclosed to the defendants the existence of said deeds to said *Brandigee, Woodworth* and *George Page*, or either of them, or of the state of said record title, said policy was, by reason of such omission and concealment, rendered void and ineffectual, gave no instruction, and made no charge whatever to the jury, excepting so far forth as may be embraced in the portion of the charge herein before set forth.

And the court furthermore instructed the jury, that, although in the opinion of said court, the plaintiff was not entitled to recover, by reason of the outstanding title of said *Brandigee*, at the time of the effecting of said insurance, as matter of law, they might, *pro forma*, treat it as no objection to a recovery, if they found the other facts, as to this mortgage, for the plaintiff.

The jury returned a verdict for the plaintiff; and the defendants moved for a new trial for a misdirection.

*Hungerford* and *Welles*, in support of the motion, contended, That the plaintiff's title was fatally defective, relying upon the express terms of the charter, *sect.* 13. (*a*) They cited *Wood* & al. v. *Hartford Fire Insurance Co.* 13 *Conn. R.* 533. 544. and referred to *Snyder* v. *Farmers Ins. & Loan Co.* 13 *Wend.* 92. as illustrating the doctrine they contended for.

*T. C. Perkins*, contra, contended, 1. That the plaintiff was not precluded from a recovery, by reason of a defect of title in the subject of insurance. The general law of

(*a*) Much of the argument on both sides, was expended upon points, which were not decided by the court, and which, therefore, do not appear in this report of the case.

*Hartford,*
June, 1852.

Warner
*v.*
The Middlesex Mutual
Assurance Co.

*Hartford,*
*June, 1852.*

Warner
*v.*
The Middle-
sex Mutual
Assurance Co.

insurance requires no special disclosure of title. The plaintiff unquestionably had a valid title. It was not necessary that he should detail the evidence shewing it. *Brandigee's* mortgage was extinguished; *Woodworth* had released his interest; and the executors of *Page* had conveyed his interest. No one else has made any claim to the property. The defendants have always held the plaintiff's premium note. He could not avoid it, on the ground that the policy never attached.

2. That *Brandigee* was estopped, by matter *in pais*, from claiming title to, or interest in, the premises. *Brown* v. *Wheeler,* 17 *Conn. R.* 345. 353.

HINMAN, J. Several questions are raised upon this motion, which we think it unnecessary to decide, as there is an objection to the plaintiff's recovery, which must, we think, be fatal to his case, in any aspect in which it can be presented to a court of law.

The 13th section of the defendant's charter provides, that no insurance effected on any property, shall be good and valid to the insured, unless he has a good and perfect unincumbered title thereto, at the time of effecting such insurance; or unless the true title of the insured to the same, and the incumbrances, if any, be fully disclosed and expressed in the proposals for insurance, and be also specified in the policy. The plaintiff had knowledge of this provision of the charter. His policy refers to the charter, as annexed, and made a part of the contract; and in the proposals, made for the purpose of effecting his insurance, he also refers to the charter, and asks for a policy, according to its provisions. Besides, the company is one of those mutual insurance companies, in which the insured become members of the corporation, and, with their associates, are insurers of their own property. As a member of such a corporation, therefore, an insurer, as well as the insured, he must be deemed to have had knowledge of the charter, which alone authorized the association.

Had then the plaintiff such a title to the property insured, as is contemplated in the section referred to? We think it very clear, that he had not; and as it is not claimed, that he made any disclosure of the true state of his title, he must

fail in this action. It is admitted, that before the plaintiff
acquired any title to the property, the former owner had
mortgaged it to *E. Brandigee,* and that that mortgage had
not been released, when this insurance was effected. It also
appeared, that, if the mortgage debt to *Brandigee* was ever
paid, it was not until after the law day had expired. Now,
admitting that the mortgage debt had been paid, after the
law day, still, *Brandigee* had, according to our decisions, a
title which he could set up as a defence to an action of eject-
ment. *Smith* v. *Vincent,* 16 *Conn. R.* 1. As this title was
outstanding in *Brandigee,* it is obvious, that the plaintiff
could not have a *perfect* title, at the same time; for a per-
fect title cannot mean a title which is liable to be defeated,
by any outstanding title in another.

But it is said, that *Brandigee* would be estopped from set-
ting up his satisfied mortgage title, in consequence of his
declaration to the plaintiff, before he levied his execution,
that he claimed no interest in the premises. If it was in
consequence of such a declaration by *Brandigee,* that the
plaintiff was induced to levy his execution, no doubt *Bran-
digee* would be estopped from making any subsequent claim
to the property, as against the plaintiff, or any one claiming
under him. Still, the question is not, whether the plaintiff
had a good title in equity to the property, but whether he had
a *perfect* title. Now, a perfect title can mean nothing less
than a title which is good, both at law and in equity; and
such a title ought not to rest upon a parol estoppel. Our
statute concerning lands requires all conveyances to be in
writing; and we do not think a perfect title, derived from
another, and not adversely, can be acquired, unless it is by
writing, or matter of record. It is certain, that *Brandigee*
once had such an incumbrance upon this property, as pre-
vented any other person from having a perfect title to it.
This incumbrance has never been removed, in any other
way, than by paying his mortgage debt, after the expiration
of the law day. It was claimed, that after this, he made a
declaration, that he claimed no interest in the land. True,
this would estop him from afterwards claiming any interest
n it, if the plaintiff's levy was made in consequence of that
declaration. But the evidence was very slight, to prove, that

*Hartford,*
*June, 1852.*

Warner
*v.*
The Middle-
sex Mutual
Assurance Co.

such was the case; and the court did not put that question to the jury. The defendants, therefore, upon this ground, would be entitled to a new trial; and we think it unnecessary to consider the effect of the estoppel, had it been expressly found by the jury.

It is proper, however, to say, that the evidence in favour of the estoppel is so slight as hardly to be sufficient to justify the submission of the point to the jury. All that the plaintiff offered to prove, was, that shortly before his levy, he enquired of *Brandigee* whether he claimed any interest in the premises; and he was informed by *Brandigee*, that he did not. This might have been, and probably was, intended as a mere acknowledgment that his debt was paid. If so, it had no reference to the legal title, which his mortgage deed gave him, and amounts to no more than proof of the payment of the mortgage debt, in any other way; which, we have seen, is not sufficient to destroy, at law, the title which the deed originally conveyed to him. Nor was there any other evidence that the levy was made in consequence of this declaration of *Brandigee*, than the mere fact, that it was made a short time before the levy was made. We have not, therefore, thought it necessary to determine definitely the effect of the estoppel claimed, being satisfied that a new trial must be granted, on the ground suggested; and believing also, that the evidence was not sufficient to raise the question of the estoppel.

This may be a hard case for the plaintiff, but we think it conclusive upon him, in a court of law; and whether he has any remedy in chancery, it is not for us now to determine. The point is not an immaterial one, when it is considered, that the company has a lien upon all the property they insure, for the purpose of paying losses that may be assessed upon its members; and it is very obvious, that, if they were seeking to make their lien available, they might meet with difficulties, in regard to the proof of the payment of the *Brandigee* debt, as well as of the matter of estoppel, which the plaintiff can more easily avoid. It was to guard against the necessity of being driven to resort to such proof, that the 13th section of the charter was drawn up, in such clear and unequivocal language.

We advise the superior court, that the defendants are entitled to a new trial.

In this opinion the other judges concurred.

New trial granted.