### INSURANCE COMPANY *v.* HAVEN.

The owner in fee of land and of the buildings thereon, to whom has been issued a policy of fire insurance, which provides that "if the interest of the assured in the property be any other than the entire, unconditional, and sole ownership of the property for the use and benefit of the assured, or if the buildings insured stand on leased ground, it must be so represented to the company, and so expressed in the written part of the policy, otherwise the policy shall be void," is entitled, upon their destruction by fire, to recover on his policy, although, at the time it was issued, there was an outstanding lease for years of the land to a third party, which fact was neither so represented to the company nor expressed in the written part of the policy.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. Lawrence Proudfoot* for the plaintiff in error.

*Mr. Robert Hervey, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Policies of fire insurance are contracts whereby the insurers undertake for a stipulated sum to indemnify the insured against loss or damage by fire, in respect to the property covered by the policy, during the prescribed period of time, to an amount not exceeding the sum specified in the written contract. Angell. Fire and Life Ins. 43.

Insurance was effected by the plaintiffs, on the 9th of May, 1870, in the company of the corporation defendant for the term of one year, against loss or damage by fire, to the amount of $3,000, covering the ten buildings therein described, each of which being insured in the sum of $300.

It appears by the bill of exceptions that the policy was in the usual form of policies issued by the defendant, and that it provided that " if the interest of the assured in the property

be any other than the entire, unconditional, and sole ownership of the property for the use and benefit of the assured, or if the buildings insured stand on leased ground, it must be so represented to the company, and be so expressed in the written part of the policy, otherwise the policy shall be void."

Two other stipulations are contained in the policy, which it is important to notice: 1. That "the use of general terms, or any thing less than a distinct specific agreement clearly expressed and indorsed on the policy, shall not be construed as a waiver of any printed or written condition or restriction therein." 2. That the policy is made and accepted in reference to the foregoing terms and conditions, which are declared to be a part of the contract, and may be used and resorted to in order to determine the rights and obligations of the parties to the policy.

Nothing was expressed in the written part of the policy indicating or tending to indicate that the interest of the insured in the property purporting to be insured was any other than the entire, unconditional, and sole ownership of such property for the use and benefit of the insured, or indicating or tending to indicate that the buildings insured stood on leased ground.

Payment of the alleged loss being refused, the plaintiffs instituted the present suit in the State court, which was subsequently removed into the Circuit Court of the same district, the parties agreeing that the plaintiffs might prove any claim they have under the common counts as if they should add special counts, and that the defendants might prove any defence they have to the action under the general issue the same as if it was set up in a special plea.

Pursuant to that stipulation, the parties went to trial; and the verdict and judgment were for the plaintiffs in the sum of $3,730 damages, with costs of suit. Exceptions were taken by the defendants to the charge of the court; and they sued out a writ of error, and removed the cause into this court.

Neither title-deeds nor evidence of the same was introduced by the plaintiffs; but the defendant admitted at the trial that "the plaintiffs were owners in fee of the land on which the buildings insured stood" at the time of the fire, as appears by the bill of exceptions. Proofs were introduced by the plaintiffs, admitted by the defendant to be in due form, which showed

that the buildings described in the policy were, on Dec. 31, 1870, destroyed by fire, and that the property insured belonged to the plaintiffs, subject to the lease mentioned in the proofs so introduced, to which more particular reference will presently be made. Other evidence was introduced by the plaintiffs, but the defendant offered no evidence; and the court directed the jury to return a verdict in favor of the plaintiffs for the amount of the policy, with interest from the expiration of sixty days subsequent to the time the proof of loss was exhibited.

Seasonable exceptions were filed to the charge of the court, upon the ground that the lease mentioned in the proofs of loss show that the plaintiffs were not at the time of the loss the entire, unconditional, and sole owners of the property for their own use and benefit.

Sufficient appears to show that the fee-simple title of the land was in the plaintiffs, and that they were the entire owners of the property destroyed, subject to the lease mentioned in the proofs of loss; and it was admitted by the defendant that the fire caused a total loss of the property, and that the value of the buildings exceeded the amount of the insurance.

By the terms of the lease, referred to in the proofs of loss, it appears that the instrument was for a term of ten years, from May 1, 1868, to May 1, 1878, and that it covered the land on which the insured buildings stood, and the buildings and improvements to be built thereon, having been executed before the buildings were erected, at a rental of $3,500 per annum for the first five years, and $5,976 per annum for the second five years.

Ten buildings were to be erected, to cost not less than $24,000; and the lessor was to pay one-half the amount in instalments, each instalment to be $1,000, and to be paid when the lessee had expended twice that amount in the prosecution of the work. Arrangements of a contingent character are also prescribed in case the lease is continued or determined, and for the basis of adjustment in either event and for payment or repayment as the case may be, which it is not necessary to reproduce in the present case.

Errors assigned material to be noticed are as follows: 1. That the court erred in directing the jury to return a verdict in

favor of the plaintiffs for the amount of the policy and interest. 2. That the court should have directed the jury to return a verdict the other way, as the law of the case was with the defendant. 3. That the court erred in not submitting the questions of fact to the jury whether the plaintiffs were so far the sole, entire, and unconditional owners of the property insured as to be entitled to recover in view of the evidence.

Authorities to prove that a fee-simple estate is the highest tenure known to the law are quite unnecessary, as the principle is elementary and needs no support; nor is any argument necessary to show that the title of the plaintiffs to the land where the buildings stood was of that character, as that is admitted in the bill of exceptions, which constitutes a part of the record.

Concede that, and it follows that the plaintiffs were, within the meaning of the policy, the entire, unconditional, and sole owners of the land where the buildings stood, for their own use and benefit, at the time of the fire; and, if so, the *prima facie* presumption must be that they held the title of the buildings by the same fee-simple title, in the absence of any evidence in the case to controvert that conclusion. None certainly was introduced by the defendant, and it is not pretended that there is any thing in the proofs introduced by the plaintiffs to support any different theory, except the lease referred to in the evidence offered to prove the loss.

Land-owners under a fee-simple title, in the absence of any proof to the contrary, are certainly presumed to be the owners of the buildings erected and standing on the premises; the rule being that the buildings and the lands together are known as real estate, and the buildings, where nothing is shown to the contrary, are presumed to be held by the fee-simple owner of the land by the same title as the land on which the buildings are situated, from which it follows that the plaintiffs, being the owners in fee of the same, are also the owners in fee of the buildings, unless there is something in the terms of the lease to disprove that theory; and it is equally clear, that, if they are the entire, unconditional, and sole owners of the buildings as well as of the land, the assignment of error must be overruled.

Nor is any thing contained in the lease to support any different theory. Instead of that, the lease shows that the plaintiffs were the owners of the land, and that the contractor agreed to erect the ten buildings on the land for the owners; nor does it make any difference that the owners of the land contracted with the builder that they, when the buildings were erected, would lease the same to him for the term of ten years.

Buildings of every kind are frequently erected by land-owners to be rented; nor is it any thing uncommon that the contract for lease should be made before the buildings are erected, or that the contract for a lease should be blended with the contract for erecting the building, as in this case. Leases of the kind are not uncommon; nor is there any thing in the terms of the instrument to countenance the theory that the title of the plaintiffs did not remain as before, — a fee-simple title, as described in the admission of the defendant.

In the words of the contract, the lessee agreed to proceed at once to erect ten buildings on the land therein described, to cost not less than $24,000 for the other party to the instrument, and " to receive payment for the same at the times and in the manner therein described," which of itself shows to a demonstration that the buildings when erected became the property of the plaintiffs, as the terms of the instrument called a lease show that the buildings were erected for the plaintiffs on their land, and that they paid the agreed price for their erection. Decided support to that theory is also derived from another clause of the lease, by which the lessee bound himself to insure the buildings during the time employed in their erection, in the name and for the benefit of the plaintiffs, and to deposit the policies in their keeping and possession. Policies were to be taken out and kept in force in the sum of $13,000, in the name and for the benefit of the lessors, during the continuance of the lease, in companies to be approved by the plaintiffs; and the stipulation was that the policies should be deposited with lessors of the property. Other evidence to support the theory of the defendant is entirely wanting, the record showing that they offered no evidence at the trial; and inasmuch as the terms of the lease show that the plaintiffs owned the land in fee-simple, and that they contracted to have the buildings erected and

paid for their erection, and caused them to be insured in their own name and for their own benefit, it is clear that the supposed defence that the plaintiffs were not the entire, unconditional, and sole owners of the buildings utterly fails, and that the charge of the court directing a verdict for the plaintiffs is correct.

Attempt is made in this case to maintain the theory that the plaintiffs are not the entire owners of the property, because it was under lease both when the policy was issued and at the time of the loss, but it is clear that the theory has no foundation in law or justice. Nor can the theory be sustained which attempts to separate the ownership of the buildings from the land, which, it is admitted, is vested in the plaintiffs by a fee-simple title. Such an assumption is contrary to the facts exhibited in the record, and can no more be supported than that the lessees of stores, tenement-houses, or ther buildings in our large cities own the same by mere possession or occupancy of the particular store, tenement, or building included in the lease they hold from the owner.

Thousands of cases arise where dwelling-houses, stores, and other buildings of every kind are leased to occupants, for longer or shorter periods of time, and upon still more varying conditions and stipulations, and yet the owners procure insurance upon the same without mentioning the names of the lessees in the policies, or ever suspecting that they have omitted any duty, or been guilty of any concealment or neglect. Insurance companies set up no such pretence; and, if they should do so, they would find no support to such a theory in the courts of justice.

Stores and other buildings are sometimes erected upon leased lands by parties who have no title other than what is derived from their lease, which is a very different thing from the case where the owner, both of the land and the building, leases the estate to the occupant for a term of years, without parting with the fee-simple title to the land or the building. Fee-simple ownership in such a case is matter of importance to the insurer, especially if the company is a mutual one, as such companies usually have a lien on the premises for the payment of the premium; nor is the ownership of the land an immaterial

matter, even if no such lien arises, as it furnishes an important element to enable the company to determine whether it is expedient to take the risk.

Considerations of the kind, it may be presumed, induced the defendant to insert the condition in the policy of the plaintiffs, "that, if the buildings stand on leased ground, it must be so represented to the company, and must be so expressed in the written part of the policy, otherwise the policy shall be void." Nothing of the kind is pretended in this case; and, if it were, it could not be sustained for a moment, as it is admitted in the record that the plaintiffs were the owners in fee of the land where the buildings stood at the time of the fire.

Adjudged cases are invoked to sustain the theory of the defence; but none of those cited support the proposition involved in the theory. Examples of the kind are *Gahagan* v. *Mutual Insurance Co.*, 43 N. H. 176, and *Warner* v. *Middlesex Insurance Co.*, 21 Conn. 444, both of which are cases where the insured represented that the property covered by the policy was free and unincumbered, when, in fact, it was incumbered by mortgage. May, Ins., sect. 290; *Towne* v. *Mutual Insurance Co.*, 7 Allen (Mass.), 51.

Cases are also cited where the insured had only a bond for a deed, or only a leasehold interest, and where the insured procured a policy as the absolute owner of the property in the face of those facts. *Atlantic Insurance Co.* v. *Wright*, 22 Ill. 474; *Smith* v. *Mutual Insurance Co.*, 6 Cush. (Mass.) 448; *Brown* v. *Williams*, 28 Me. 252; *Hinman* v. *Hartford Insurance Co.*, 36 Wis. 167.

Much discussion of such authorities is not required, as it is clear they do not favor the theory of the defendants. Nor does the case of *Smith* v. *Colombia Insurance Co.*, 17 Pa. St. 253, aid the defendants, as it is clear that, if a mortgagee insures his interest in the premises, he is bound, under a provision calling for incumbrances affecting his interest, to state prior mortgages on the same premises. May, Ins., sect. 293.

Misrepresentations of material facts, of course, avoid a policy; but there were none such in the case before the court. *Colombia Insurance Co.* v. *Lawrence*, 10 Pet. 507, cited by the defendant.

Where the policy contained the provision that if the property to be insured is held in trust, or on commission, or is a leasehold interest, or an equity of redemption, or if the interest of the insured in the property is any other than the entire, unconditional, and sole ownership of the property, for the use and benefit of the insured, it must be so represented to the company, and be so expressed in the written part of the policy, otherwise the policy shall be void, the Supreme Court of Illinois held, in a case where it appeared that the property had been sold under judgment and execution against the insured, that the non-disclosure of the sale and purchase avoided the policy, though the period allowed for redemption had not expired. *Reaper City Insurance Co.* v. *Brennan*, 58 Ill. 158.

By the sale and purchase in that case, nothing was left in the insured but the right of redemption, which would expire in one year from the sale; and it was well held by the court that, the paramount title being in a third person, it could not be truthfully said that the insured had, at the date of the insurance, "the entire, unconditional, and sole ownership of the property."

Beyond all doubt, the property in the case under consideration vested in the lessors; and, if so, the two cases cited by the defendant of *Mayor* v. *Hamilton Insurance Co.*, 10 Bosw. (N. Y.) 537, and *Mayor* v. *Insurance Company*, 9 id. 366, are authorities in favor of the plaintiffs, as the facts in this case show that the property, in the true sense of insurance law, belonged to the insured at the date of the policy. *Washington & Atlantic Insurance Co.* v. *Kelly*, 32 Md. 438; *Hubbard* v. *Hartford Insurance Co.*, 33 Iowa, 333.

Unless the true ownership or interest in the property is required by the conditions of the policy to be specifically and with particularity and accuracy set forth, it will in general be sufficient if the insured has an insurable interest under any *status* of ownership or possession, in cases where no inquiries are made at the time the application is presented or the policy executed. May, Ins., sect. 284.

No inquiry was made in this case, although it appears that the agent of the company who took the insurance resided in Chicago, where the buildings were situated; nor did the de-

fendant offer any evidence at the trial to show that the unincumbered fee-simple title was not in the plaintiffs at the time the buildings were destroyed by the fire; nor did the defendant request the court at the trial to give the jury any instructions upon the subject. On the contrary, it admitted at the trial that the plaintiffs were the owners in fee of the land on which the buildings insured stood, leaving it to be inferred by the jury that the plaintiffs were also the owners in fee of the buildings.

Enough appears in the terms of the instrument called the lease to show that both the lessee and lessors treated the buildings " during the process of erection'" as the property of the plaintiffs, and to show beyond controversy that the buildings when completed vested in the plaintiffs as their absolute property, subject only to the right of the builder to occupy and use the same, just as in the ordinary case where the owners of property agree to lease the same to be used by the lessee for a stipulated rent.

Lessees holding under an ordinary parol lease do not acquire such an interest in real estate so leased as to avoid a policy, issued to the lessor, even though the insured failed to represent the matter to the company in a case where no inquiries were made of the applicant, at the time the policy was issued, as to the true character of the title or occupancy of the insured premises, and where no pretence is shown that the insured has been guilty of any fraud or misrepresentation.

Such a lease is a mere chattel interest, being reckoned as part of the personal estate of the lessee, and in case of the death of the lessee goes to his executors, and not to the heirs-at-law, as appears by all the authorities. 2 Bl. Com. (Cooley's ed.) 143; *Ex parte Gay*, 5 Mass. 419; *Brewster* v. *Hill*, 1 N. H. 351; *Bisbee* v. *Hall*, 3 Ohio, 463; *Dillingham* v. *Jenkins*, 7 Smed. & M. (Miss.) Ch. 487; *Spangler* v. *Stanler*, 1 Md. Ch. 36.

Leases for years, says Taylor, are considered chattel interests arising out of a contract between the parties, and pass only a transient interest in the land, which is not a freehold, and might originally be made at common law by parol for any certain period. Taylor, L. & T. (6th ed.) 22; *Moshier* v.

*Reding*, 12 Me. 482; *Maverick* v. *Lewis*, 3 McCord (S. C.), 211; *Carwell* v. *Dietrich*, 15 Wend. (N. Y.) 379; *Chapman* v. *Bluck*, 5 Scott, 533; *Waller* v. *Morgan*, 18 B. Mon. (Ky.) 141.

Two requisites, says Blackstone, were necessary to make a fief or feud, — 1. Duration as to time; 2. Immobility as to place: and he adds, that whatever was not a feud was accounted a chattel.

Chattels real, says the same commentator, are such as concern or savor of the realty, including terms for years, and are called real chattels, as being interests arising out of or being annexed to real estate, of which they have one quality, to wit, immobility, but want the quality of indeterminate duration, the want of which constitutes them chattels.  2 Bl. Com. 386; 2 Kent, Com. (12th ed.) 342; 5 Bac. Abr. (Bouvier ed.) 434; 2 Com. Dig., *Biens, a;* 1 Chitt. Gen. Pr. 244; Co. Litt. 46, 118 *b.*

Terms of years belonging to a testator or intestate vest in his executor or administrator without any entry, for the reason that in contemplation of law such interests are chattels.  Woodfall, L. & T. (9th ed.) 239; *Wollaston* v. *Hakewell*, 3 Man. & G. 297; *Atkinson* v. *Humphrey*, 2 C. B. 654; *Insurance Company* v. *Kelly*, 32 Md. 421.

Insurers, if they desire to object to such a risk, should make inquiries of the applicant, and should not admit at the trial, without qualification, that the insured was the owner in fee of the land, in a case where they offer no evidence in defence.

*Judgment affirmed.*