WILLIAMS *v.* BUFFALO GERMAN INS. CO.

*(Circuit Court, D. Kentucky.* February 19, 1883.)

1. FIRE INSURANCE—SOLE OWNERSHIP OF PROPERTY—OUTSTANDING INTEREST
—BOND FOR CONVEYANCE.

A policy of fire insurance described the property insured as "his two-story dwelling-house," etc., and it appeared that he had purchased the fee and taken a bond for a conveyance, but that the vendor had only a life estate in the property, with a remainder in six-sevenths thereof; that a suit had been instituted to perfect the title, to which the insured was a party; and that there was an outstanding purchase note, which he owned at the time of the insurance and the loss. *Held,* that the outstanding note, and the fact that the insured only held under a title bond, was not material to the risk, and that the fact of the outstanding seventh interest or remainder did not prevent him from being "the sole and unconditional owner," within the meaning of the policy.

2. SAME—MATERIALITY OF DEFECT IN TITLE—QUESTION FOR JURY.

In such a case the question whether the defect in the title or interest of the insured was material to the risk should have been submitted to the jury, and the peremptory instruction to the jury to find for him was error.

At Law. Motion for new trial.

*Yeiser & Moss,* for plaintiff.

*Gilbert & Reed,* for defendant.

BARR, J. I gave the instructions for plaintiff on the trial of this case, and I am glad a motion for a new trial has been entered, as it gives an opportunity for the examination of the authorities, and a more mature consideration of the questions upon which the case turned. The material facts are not in controversy, and, if I remember them, they are briefly these: No previous written application for insurance was made by plaintiff, and at the time he insured he was in the possession of the property insured, claiming the absolute ownership thereof. He had purchased a fee-simple title, and held a title bond for a conveyance with covenant of warranty. There was an outstanding purchase note, which he owed at the time of the insurance and at the time of the loss. At this time there was a defect in the title of the vendor, Mrs. Perkins. She had a life estate in the property, and had obtained from her children their interest, except one of them, who held an undivided one-seventh in the remainder after the death of Mrs. Perkins. There was pending in the McCracken circuit court a chancery suit at the time this insurance was obtained. Williams was a party to this litigation, and its object was to perfect Mrs. Perkins' title so that he (Williams) might obtain from her a perfect title. The policy describes the property insured as plaintiff's: "His two-story frame dwelling-house and ell." There was no other statement as to title and ownership; and as the policy provides that the assured, by the acceptance of this policy, warrants that he, among other things, has not "omitted to state to the company any information material to the risk," the learned counsel insists that the omission to state to the company the outstanding vendor's note, and that he only held

under a title bond, was and is fatal to his contract of insurance.
The outstanding note, and the fact that plaintiff's title was evidenced
by a title bond instead of a deed, were not material to the risk, since
the loss to the assured would have been equally as great as if his
title had been a legal instead of an equitable one, and the note had
been paid instead of being unpaid. It will be observed that the as-
sured was not asked as to the evidence of his title, nor did he war-
rant against incumbrances. The defect of title, the outstanding one-
seventh interest in the remainder, which the assured had notice of,
I will consider under the next defense. There is a provision of the
policy which provides that it shall become void unless consent in
writing is indorsed by the company in each of the following instances,
viz.:

"If the assured is not the sole and unconditional owner of the property;
* * * or if any change takes place in the title, interest, location, or pos-
session of the property, * * * whether by sale, transfer, or conveyance,
in whole or in part, or by legal process, or by judicial decree; or if the title
or possession be now, or shall hereafter become, involved in litigation."

This is rather awkwardly expressed, but I presume the meaning
is that if the assured is not sole and unconditional owner of the prop-
erty insured, or if the title or possession of it is involved, or shall
thereafter become involved, in litigation, it must be consented to,
and consent indorsed in writing by the company. I am inclined to
the opinion that this does not require the assured to guaranty his
title, but only requires that he hold, *claiming* a sole and uncondi-
tional ownership. If this is not the correct construction, then every
one accepting such a policy thereby warrants his title to be *perfect*.

Those who insure against fire and other losses are interested in
knowing who is in possession of the property insured, and upon whom
the loss would primarily fall if there were no insurance, and hence
are interested in knowing whether the assured is holding as a sole
and unconditional owner. The *character* of his possession and hold-
ing is the matter of interest to the insurer, and not his paper title.

We should give a reasonable construction to the language of this
contract, and, in ascertaining what is a reasonable construction, the
purpose and object of the contract should be considered.

The plaintiff had purchased a sole and unconditional ownership,
and was in possession under that purchase. The fact that his
vendor, although claiming a fee-simple title, had in law only a life
estate and six-sevenths of the remainder, does not, I think, prevent
plaintiff from being the sole and unconditional owner of the property,
within the meaning of this provision of the policy. If the assured
are expected not only to state the extent of their interest in the prop-
erty sought to be insured, but to guaranty a *perfect* title, under pen-
alty of losing the benefit of their insurance, the language should be
clear and explicit, so that the assured may understand it.

The authorities are in some conflict upon this subject.

The supreme court, in *Ins. Co.* v. *Haven*, 95 U. S. 245, held that an outstanding lease for 10 years was not a violation of an agreement that the assured had the "entire, unconditional, and sole ownership of the property."

In *Hough* v. *City Fire Co.* 29 Conn. 10, the court held that the word "absolute" in such a provision in the policy was synonymous with "vested." In that case the policy provided that "if the interest in the property to be insured be a leasehold interest, or other interest not *absolute*, it must be so represented to the company, and expressed in the policy in writing, otherwise the insurance shall be void;" and the facts were that the assured was in possession under a parol agreement to purchase. The assured recovered for his loss. In *Wineland* v. *Security Ins. Co.* 53 Md. 276, the policy provided that if the assured was not "the sole and absolute owner of the land on which the building should stand by a title in fee-simple," the same should be stated and indorsed in writing, else the policy would be void. The assured had entered under a parol gift from his uncle, who was the fee-simple owner, and had made improvements on the land, and the court held he could not recover. Much stress was laid upon the words "by a title in fee-simple."

In *American Basket Co.* v. *Farmville Ins. Co.* 3 Hughes, 251, the assured had only an equitable fee, and it had been stated in the application that the title was in the assured; still a recovery was had, although the policy, like the one at bar, required the assured to be the "entire, unqualified, and sole owner."

In *Washington Mills M. Co.* v. *Commercial Fire Ins. Co.* 13 FED. REP. 646, the policy provided that "if the interest of the assured in the property be any other than the entire, unconditional, and sole ownership of the property for the use and benefit of the assured, or if the buildings insured stand on leased ground, it must be so represented to the company, or so expressed in the written part of the policy, otherwise the policy shall be void."

The land had been sold by the assured before obtaining the policy, but in the conveyance the assured had reserved the right to remove the buildings within a certain time, and if not removed within that time they were to be the purchaser's. Those buildings were insured and destroyed during the time within which assured could remove them. Held, he could recover for the loss of the buildings.

In *Waller* v. *Northern Assurance Co.* 10 FED. REP. 233, the policy provided as in *Washington Mills, etc.*, v. *Ins. Co., supra*, and the finding of the jury was that the assured was simply a mortgagee with a debt of $5,000, and that the property assured was worth $8,000 or $9,000. The assured held by an absolute, unconditional title, although in fact he was only a mortgagee. The court held that there could be no recovery, because the assured's true interest was material to the risk, and should have been communicated to the insurer

In *Rumsey* v. *Phœnix Ins. Co.* 1 FED. REP. 396, the provisions of the policy were like those in the policy sued on, and the court uses this very pertinent language to the case at bar:

"A party in possession of insured premises under a valid subsisting contract of purchase is equitable owner, and has an insurable interest, although he has not paid the whole consideration money. He is not guilty of a misrepresentation if he represents the house as *his* when he applies for insurance, and there is no breach of warranty if the house is described as his dwelling-house in the policy. The statement and the state of facts are consistent with each other; there is no misrepresentation, because an intent to deceive cannot be inferred; there is no breach of warranty, because *the representation is true in substance.*"

It is insisted that the plaintiff's title was, at the time of the insurance, "involved in litigation," and therefore he should not recover.

There was a litigation in which plaintiff was endeavoring to perfect his title, but the outstanding one-seventh interest could not have been recovered from him, as that interest did not accrue until the death of the mother, who was plaintiff's vendor. The chief purpose of the chancery suit was to have the property which plaintiff exchanged for the property insured take the place of that property. "Involved in litigation" means, in this connection, a litigation in which there could be a recovery of the assured's title in part or in whole. I do not mean that the litigation should show that there *would* be a recovery against the assured, but only that the litigation should be of such a *character* that there might be some recovery against him. Thus, to illustrate, suppose a party held by title bond, and was entitled to a deed, and was suing to get the legal title out of heirs or others, and the suit was of such a character that in *no* event could there be a recovery against such a party, this would *not be a* litigation *involving* the title of such party within the meaning of this policy. In this case the daughter of Mrs. Perkins could in *no* event have recovered of Williams anything, because her interest was that of a remainder-man, subject to a prior life estate, which was owned by Williams.

The views indicated on the trial, after a careful consideration, are still adhered to; but I am inclined to think error was committed by a peremptory instruction to the jury to find for plaintiff.

It may be that the jury would have found that this defect in the title and interest of plaintiff was a fact material to the risk, and as plaintiff knew of it, he should have communicated it to the defendant. This question should have been left to the jury.

I shall, therefore, grant defendant a new trial, and it is so ordered. The costs will follow the final result.