The Michigan Mutual Life Insurance Company v. Naugle.

No. 14,995.

THE MICHIGAN MUTUAL LIFE INSURANCE COMPANY v. NAUGLE.

130  79
135  418

CHANGE OF VENUE.—*Number of Changes.*.—A party is entitled to only one change of venue from the county.

SAME.—*Failure to Pay Costs.—Payment by Opposite Party.*—If the party asking the change of venue fails to pay the costs, the opposite party may do so and cause the change to be perfected, unless the conduct of the party asking it shows that he had waived the change; but a mere failure to perfect it does not show such a waiver.

SAME.—A party can not prevent the court's sending a cause to a particular county by showing in his affidavit for a change that the same causes are operating against him in such county as exist in the county where the suit was brought; such a statement is for the information of the court, serving to aid it in the exercise of its discretion.

LIFE INSURANCE.—*Suicide.—Forfeiture for.—Accidental Death.*—A condition in a policy of life insurance that it shall be void if the insured shall die by his own hand has no application where the insured kills himself by accident.

SAME —*Suicide.—Insanity.*—Such a condition does not apply if the insured takes his life while of unsound mind, if his mind is so impaired by disease that he does not comprehend the moral character of his act, though he may have sufficient mental capacity to know the physical consequences of the deed.

SAME.—*Compromise Procured by Fraud.*—Where a party has been induced by fraud to settle a claim on an insurance policy, and has surrendered the policy on the payment of the amount of the compromise, he may rescind such compromise and sue for the remainder due on the policy.

From the Jasper Circuit Court.

*W. S. Hartman* and *W. H. Hamelle,* for appellant.

*E. P. Hammond, W. B. Austin, U. Z. Wiley* and *D. L. Bishop,* for appellee.

MCBRIDE, J.—This suit was commenced in the Benton Circuit Court, and the venue changed to the Jasper Circuit Court. The appellant, when it appeared in the Jasper Circuit Court, moved to remand the cause to Benton county for trial. This motion was overruled. The appellant alleges that this was error.

. The Michigan Mutual Life Insurance Company *v.* Naugle.

The change of venue from Benton county was granted on motion of the appellant, who was the defendant below. The affidavit upon which the motion was based alleged that the party asking it could not have a fair and impartial trial of the cause in Benton county for the reason that in that county an odium attached to the defence, and also because of bias and prejudice. It also contained averments that the same reasons which would operate to prevent a fair trial in Benton county, would also operate to prevent a fair trial of the cause in Jasper and in Newton counties. By the same motion a change of judge was asked upon grounds sufficiently shown. Notwithstanding the showing as to the counties of Jasper and Newton, the court ordered the venue changed to Jasper county.

Twenty days' time was allowed within which to perfect the change from the county. The appellant did not pay the costs within the specified time, but the appellee, the plaintiff below, did pay them, and the papers were, within the time limited, transmitted to the clerk of the Jasper Circuit Court, and filed by him, and the cause docketed in that court for trial.

The appellant appeared in the Jasper Circuit Court, and moved to remand the cause to the Benton Circuit Court, showing in support of the motion the foregoing facts.

Counsel for the appellant also, in their showing in support of their motion to remand, assign as their reason for not paying the costs and perfecting the change of venue themselves, that after investigation they concluded that they could have a fairer trial in Benton than in Jasper county, and therefore decided to abandon their application to change the venue of the cause. The appellant insists that the payment of the costs by the appellee was unauthorized ; that it did not justify the clerk in transmitting the papers, and that the Jasper Circuit Court did not thereby rightfully acquire jurisdiction of the cause.

It is apparent that the Legislature, in the enactment of the

statute governing changes of venue, sought to accomplish a double purpose. It was designed, primarily, to enable litigants to remove their causes for trial from an atmosphere of prejudice and unfairness to a locality where they might find fair and unbiased triers, with surroundings not tainted by an undeserved odium affecting them or their cause. At the same time they wishéd, so far as possible, to limit the mischief that might be done by those whose only wish was delay, and the hindrance of justice. Therefore, while providing for changes of venue, they allow but one change, and invest the court with the discretion of designating the county to which it shall go, and the time within which the change shall be perfected by the payment of the cost.

When the one change allowed is granted, whether it is perfected or not, the party who asked it can have no other change. The making of the order ends his right. He has then had the one change of venue allowed him, whether he avails himself of it or not. When a party applies to a court for a change of venue it must be presumed that the application is made in good faith, not for delay, but because the party asking it really believes he can have a fairer trial elsewhere. The opposite party is authorized to act upon that presumption. While no duty rests upon him in the matter, and the party who asks for the change is required to do all that is necessary to perfect it, we can see no good reason why he should complain if his opponent takes him at his word and aids in perfecting it. It certainly can not be said that he is harmed by it. But it is said that a party has the right to waive his right to a change of venue after it has been granted him, and that this practice would deprive him of that right. It can not be said that such a waiver is the exercise of a right. The change of venue is his by right, and his waiver is simply his neglect to avail himself of that right.

A failure to pay the costs of the change within the time

limited does operate as a waiver by express provision of the statute, but it does not follow that the opposite party is compelled to wait until the expiration of that time to ascertain if he will by his neglect thus waive it.

We wish it understood, however, that what is said above is limited to cases like that before us, where the only evidence of waiver is the mere neglect or failure of the party to avail himself of the change granted. We do not wish to be understood as holding that a party may not, after he has been granted á change of venue, in open court and before the change is perfected, make such waiver of the right as will result in leaving the cause still pending in that court, to be removed only on application of some other party.

While we do not decide that question, because not before us in this case, we are inclined to the opinion that, while the order granting the change would bar the right of the party to any further change of county, nevertheless he may thus waive the actual removal of the cause out of the county on his application, after which waiver the opposite party would have no right to perfect it.

It was not error for the court to disregard statements in the affidavit relating to the alleged odium and prejudice existing in Jasper and Newton counties.

Such statements in an affidavit for change of venue, relating to counties other than that in which the cause is pending, can be regarded only as matter of information, serving to aid the court in the exercise of its discretion in determining to what county the cause should be sent. Viewed in that light, they are not improper, but they are in no sense binding upon the court, and may be disregarded.

This brings us to the consideration of the next alleged error discussed by counsel, that the court erred in overruling separate demurrers to each paragraph of the complaint. The appellee is the widow of John Pearcy, who died March 10, 1884. At the time of his death he held an insurance policy upon his own life, issued by the appellant in favor of

the appellee for the sum of $2,000. The premiums were all paid at the time of his death, and appellee, in accordance with the terms of the policy, made proper proof of his death. May 29th, 1884, the appellant compromised with her by paying her $1,000, and obtained from her a surrender of the policy, and a release as to the remainder due thereon.

The policy contained a clause to the effect that it should be void if the assured should die by his own hand. It was alleged that this compromise was obtained by the.appellant under pretence that Pearcy died by his own hand under circumstances rendering the policy void.

The complaint sets out causes of action *ex delicto* to recover damages growing out of alleged fraud, which it was charged was practised by the representatives of the appellant in effecting the compromise. Facts are stated in each paragraph of the complaint, showing the issuing of the policy to John Pearcy for the benefit of appellee, his death, proofs of the same and compliance upon his and her part with the conditions of the policy, and that appellant on May 29, 1884, effected a compromise with her by paying $1,000, being only one-half the amount due upon the policy.

It is averred in each paragraph of the complaint :

"Said John Pearcy died suddenly, and, although said plaintiff was living with him at the time of his death,. she was for a long time prior thereto, at the time thereof, and for. a long time thereafter, in exceedingly bad health, and in a nervous and excited condition of mind, so that she was incapable of judging or determining the cause of said Pearcy's death, and had no knowledge or means of knowledge as to whether he died a natural death, or from an overdose of laudanum ; and she was also incapable, from her said bad health and nervous and excited condition, of forming any opinion as to whether said Pearcy was or was not of sound mind at and before the time it was claimed by said defendant that he had taken said laudanum."

It is also averred in each paragraph of the complaint :

"That on said 29th day of May, 1884, said defendant, for the purpose of procuring a surrender of said policy by paying said plaintiff the sum of only one thousand dollars, and also procuring from her a release of the remainder due upon said policy, falsely and fraudulently represented to said plaintiff that said John Pearcy died by his own hand while of sound mind, and that it had evidence whereby it could prove that he so died, and that such evidence would defeat any suit that she might bring upon said policy; and that if she did not accept the sum of one thousand dollars, and surrender said policy, and release said defendant as to the residue thereof, she would never get anything; that at the time said representations were made, said plaintiff was in bad health and in a weak and feeble condition of mind as well as of body, and had never had any experience whatever in business, and knew nothing about life insurance, and did not know what the facts were concerning her said husband's death, nor what facts relating thereto said defendant could or might be able to prove, and she believed and relied upon said representations and accepted said one thousand dollars, and surrendered to said defendant said policy, and signed and delivered to it said release."

In the first paragraph it is averred that the deceased did not die by his own hand, but died a natural death. In the second it is alleged that his death was accidental in taking an overdose of laudanum. In the third it is stated :

"That said John Pearcy died from the effects of laudanum, admininistered by his own hand while he was of unsound mind, and when he was incapable of distinguishing as to the right or wrong or moral consequences of the act he was doing in taking said laudanum."

It is alleged in each paragraph, "and that said defendant had no evidence whatever to prove that her said husband died of his own hand while of sound mind. The plaintiff avers that said representations were made by said defendant for the fraudulent purpose of swindling, cheating and de-

frauding this plaintiff out of one thousand dollars, and that the same were recklessly made by said defendant, it at the time not knowing that they were true."

The only material difference between the several paragraphs of the complaint are that, in the first, it is alleged that the deceased died a natural death ; in the second that, while he died by his own hand, his death was accidental; and in the third that, while death was self-inflicted, he was at the time of unsound mind, and incapable of judging the moral consequences of the act.

Under the facts alleged in the first paragraph, that the insured died a natural death, there was no forfeiture of the policy. And this is also true of the facts stated in each of the other paragraphs.

The condition in a policy of life insurance, that it shall be void if the insured shall die by his own hand, has no application where the insured kills himself by accident  *Northwestern, etc., Ins. Co.* v. *Hazelett,* 105 Ind. 212 ; *Equitable, etc., Society* v. *Patterson,* 41 Ga. 338 (5 Am. Rep. 535) ; *Mallory* v. *Travelers' Ins. Co.,* 47 N. Y. 52 (7 Am. Rep. 410) ; *Penfold* v. *Universal Ins. Co.,* 85 N. Y. 317 (39 Am. Rep. 660) ; *Edwards* v. *Travelers' L. Ins. Co.,* 20 Fed. Rep. 661.

Nor does such a condition in a policy of life insurance apply if the insured destroys his life while of unsound mind, if his mind is so impaired by disease that he does not comprehend the moral character of the deed, though he may have sufficient mental capacity to know the physical consequences of the act. *Breasted* v. *Farmers', etc., Co.,* 8 N. Y. 299 ; (59 Am. Dec. 482, and note on p. 487) ; *Phadenhauer* v. *Germania L. Ins. Co.,* 7 Heisk. 567 (19 Am. Rep. 623) ; *Phillips* v. *Louisiana, etc., Ins. Co.,* 26 La. Ann. 404 (21 Am. Rep. 549) ; *Connecticut, etc., Ins. Co.* v. *Groom,* 86 Pa. St. 92 (27 Am. Rep. 689); *Schultz* v. *Insurance Co.,* 40 Ohio St. 217 (48 Am. Rep. 676); *Life Ins. Co.* v. *Terry,* 15 Wall. 580 ; *Insurance Co.* v. *Haven,* 95 U. S. 242 ; *Manhattan L.*

*Ins. Co.* v. *Broughton*, 109 U. S. 121; 21 Central Law Journal, 378.

It is insisted by the appellant, however, that the alleged fraudulent representations were not such as the appellee had the right to rely upon—that they were not of material facts, and were, at most, representations of opinion. This, we think, is true as to some of the representations made, but not of all. The representations that the decedent had died by his own hand, while he was of sound mind, and that the appellant had evidence whereby it could prove that he so died, were each representations of fact, and of material facts. We think, under the circumstances detailed in the complaint, the appellant was justified in relying and acting upon them.

In our opinion the facts stated in the complaint clearly bring the case within the rule stated in *Home Ins. Co.* v. *Howard*, 111 Ind. 544, which, like this, was where a party alleged that he had been induced, by fraud, to settle a claim on an insurance policy, and surrender the policy on receiving a portion of the sum due. The court said (page 548), "a person so circumstanced may retain what he has received, and sue whoever is liable for the consequences of the deceit by which the compromise was brought about, and recover whatever damages resulted therefrom."

See, also, *Johnson* v. *Culver*, 116 Ind. 278; *Hays* v. *Massachusetts, etc., Ins. Co.*, 125 Ill. 626.

We think each paragraph of the complaint stated a good cause of action.

The only remaining question is, was the verdict sustained by sufficient evidence?

As we read the evidence, if the question were before us to be decided on the weight of evidence, we could not say that there was a preponderance sustaining the appellee in all the material elements of the controversy.

There is, however, some evidence *tending* to establish every material fact necessary to justify a recovery by her. Under the now thoroughly established practice of this court,

there can be no interference with the result reached by the jury and the trial court. The jury, not only by their general verdict, but by answers to interrogatories propounded by both parties, find every material averment of the complaint proven. The court below has refused to disturb their finding, and we can not.

Judgment affirmed, with costs.

Filed Dec. 15, 1891.