(Hamilton County Common Pleas Court.)

## ROSA PAGENHARDT v. THE METROPOLITAN INSURANCE COMPANY.

P. was insured in the defendant company; under a policy providing that if he died by his own hand within three years, whether sane or insane, the policy should be void. He died within three years as a result of cutting his throat with a table-knife while in a delirium induced by erysipelas, but before death recovered consciousness and stated that he did not know what he had

done, and did not want to die. Held, that although decedent did not appreciate the moral character of his act, he was still conscious of its physical nature, and intended by it to cause his death, and the policy was voided by his act.

Heard on motion for new trial.

JELKE, J.

In the opening statement, defendant admitted plaintiff's prima facie right to recover on the policy, and assumed the burden of proving that Julius Pagenhardt died under conditions which made the policy void and the defendant company liable only for the premiums paid thereon, viz, $8.70, for which amount defendant offered to confess judgment.

Defendant thereupon introduced the policy in evidence, directing special attention to the sentence of the first clause of the conditions printed on the back thereof:

"If the insured die by his or her own hand or act within three years from the date hereof—whether the insured be sane or insane—the policy shall be void, but the company will, in such case, return the premiums to one of the persons mentioned in the last clause of the face of this policy."

And further introduced testimony showing that the deceased died by his own hand and act within three years from the date of the policy, and rested.

Plaintiff admitted the testimony of the defendant, and thereupon called several medical men who had attended the deceased just before and at the time of his death, and who also qualified as experts. These witnesses testified that in a delirium induced by erysipelas, Julius Pagenhardt, the insured, cut his throat with a table knife, thereby causing his death; that before dying he recovered consciousness, and stated that he did not know what he had done, and that he did not want to die.

Defendant declined to call its medical experts in rebuttal, saying that their testimony would be identical with that of plaintiff's testimony in this regard.

The testimony of plaintiff and defendant having been reciprocally admitted to be true, there was no issue of fact to be submitted to the jury, so that it was left to the court to instruct the jury what verdict to return on this state of facts.

Whereupon the court directed the jury to return a verdict for the plaintiff for the amount of the premium paid only, which was accordingly done.

It is on a motion to set aside this verdict, and for a new trial, that this cause now comes on for hearing.

Applied to the above as a complete summary of the facts, will the propositions of law involved in this case be considered.

The following cases have been cited as showing the development of the use of this and similar clauses in policies of insurance and the adjudications upon the same, for the purpose of throwing light around the case at bar: Borradale v. Hunter, 5 M. & G., 639; Clift v. Schwabe, 3 C. B., 437; Breasted v. Farmers' L. & T. Co., 8 N. Y., 299; Estabrook v. Union Mut. L. Ins. Co., 54 Me., 224; Pierce v. Travelers' L. Ins. Co., 34 Wis., 389; Mallory v. Travelers' L. Ins. Co., 54 N. Y., 651, and 547 N. Y., 52; Jackson v. Forster, 5 Jur. N. S., 54; Dean v. American Mut. L. Ins. Co, 4 Ala. 96; Minnick v, Mutual B. L, Ins. Co. 1 Bigelow, 689; Phadehauer v. Germania L. Ins. Co, 7 Heisk., 567; Cooper v. Mass. Mutual, 1 Bigelow, 758, Phillips v. Louisana Insurance Co., 26 La. Ann.,404; 21 Am. R., 549; Gay v. Union Mutual Life Insurance Co., 2 Bigelow, 4; St. L. L. Ins. Co. v. Graves, 6 Bush, 268; Connecticut M. v. Groom, 86 Pa., 92; Life Ins. Co. v. Terry, 15 Wallace, 580; Bigelow v. Berkshire L. Ins. Co., 93 U. S., 284; Insurance Co v. Haven, 95 U. S., 242; Manhattan Life v. Broughton, 109 U. S. 121; Connecticut Mutual v. Lathrop, 111 U. S., 612; Northwestern Mut. v. Hazelett, 105 Ind., 212; Michigan Mut. v. Naugle, 130 Ind., 79; Keels v. Mutual Reserve Fund, 29 Fed.,, 198; Weed v. Mutual Life Ins. Co., 61 Tel.,187; Equitable v. Patterson, 41 Ga., 338; Penfold v. Universal, 85 N. Y., 317; Edwards v. Travelers, 20 Fed., 661; Salentine v. Mutual Benefit, 24 Fed., 159; Streeter v. Western Mut. Union, 31 N. W., 779; DeGorza v. Knickerbocker, 65 N. Y., 232; Riley v. 5 Hartford Life, 25 Fed., 315; Union Cent. Life Ins. Co v. Hollowell, 43 N. E., 277; Ritter v Mutual Life 70 Fed., 954; Mutual Life, v. Leubrie 71 Fed. 843; Ritter v. Mutual Life 69 Fed., 505; Schultz v. Insurance Co., 40 Ohio St., 217.

I have examined them all carefully, and excluding those in which the question of accident has been manifestly present and put in issue, and excluding those wherein the policies did not contain the phrase, "whether the insured be sane or insane," or something similar, as not contributing to the solution of the case at bar, I have selected DeGorza v. Knickerbocker; Pierce v. Travelers, and Bigelow v. Berkshire, supra, as being directly helpful in solving the problem herein presented; and the case of Schultz v. Insurance Company as being the Ohio case on the subject.

The case of Pierce v. Travelers' Life Insurance Co., 34 Wis., 389, was decided in 1874; the case of DeGorza v. Knickerbocker Insurance Co., 65 N Y., 232, in 1875; and the case of Bigleow v. Berkshire Life Insurance Co., 93 U. S., 242, in 1876, and were the first cases decided where the policies contained the words "sane or insane."

In all the cases considered theretofore the words "sane or insane" were not written in the policies, and in those cases the words "shall die by his or her own hand or act" were held to refer to an act of criminal self-destruction, and not to apply to an insane person who took his own life.

Such were the leading English cases of Borradae v. Hunter, 5 M. & G., 639, and Clift v. Schwabe, 3 C. B., 437, and the lead-

ing American cases of Breasted v. Farmers' Life & Trust Co., 8 N. Y., 299, and Life Insurance Co. v. Terry, 15 Wallace, 580.

In the case at bar, as Mr. Justice Davis said in the case of Bigelow v. Berkshire Life Insurance Co., the insurers have gone farther, and sought to avoid altogether this class of risks. If they have succeeded in doing so, it is our duty to give effect to the contract, as neither the policy of the law nor sound morals forbid them to make it.

Or as Commissioner Reynolds said in the case of DeGorza v. Knickerbocker Life Insurance Co., on page 236, 65 N. Y.

"It can scarcely be doubted that an insurer of the life of a person may by apt language guard himself from liability for all disasters if the exemption does not contravene public policy. * * * Indeed, it is said by Rapallo, J., in Van Zandt v. The Mutual Benefit Life Insurance Company, 55 N. Y., 169, that' no rational doubt can be entertained that a condition exempting the insurers from liability in case of the death of the assured by his own hand, whether sane or insane, would be valid if mutually agreed upon between the insurer and the insured."

This right of the insurers is recognized in the case of Schultz v. Insurance Company, 40 Ohio St., 217, in the syllaubs, and on page 220 in the opinion, although in that case the language used is disapproved.

This being the agreed stipulation of the policy, on the state of facts set out above what is plaintiff's right, and the liability of the defendant?

Counsel for plaintiff makes two contentions. The first, ingeniously suggested, is that the delirium of which the fatal act was an incident, was an accident to the insured, and it ought to bring this case within the decisions of Northwestern Mut. v. Hazelett, 105 Ind., 212; Michigan Mut. v. Naugle, 130 Ind., 79,, and Keels v. Mutual Reserve Fund, 29 Fed., 198.

This same contention was made in the case of DeGorz v. Knickerobcker Life Ins. Co., and I can best answer it in the words of the learned commissioner in that case:

"We are asked to decide that the addition of the words 'sane or insane' to the words of a policy, that the insurer shall be excused if the assured 'die by his own hand or act' means nothing, and it is urged by way of argument that if a madman causes his own death it is no more than a mere accident, and that, therefore, a death caused by mere accident and by one in no way responsible for his acts is in fact the same thing. A death by accident, witihn the meaning of that term as used in conditions of insurance, is not a death resulting from insanity and in that connection has no reference to the condition of the mind of the party so dying. It has no relation to casualties of a different character bv which life is destroyed, and the language of a contract, unless there are special reasons to the contrary, must have a construction according to its common and ordinary meaning, as the major-

ity of mankind would understand it. 'The best construction' says Gibson, Ch. J., in the Schuylkill Navigation Company v. Moore, (2 Whart., 491), 'is that which is made by viewing the subject of the contract as the mass of mankind would view it, for it may be safely assumed that such was the aspect in which the parties themselves viewed it. A result thus obtained is exactly what is obtained from the cardinal use of construction.' It is, therefore, not too much to say that a suicide, the result of a partial or total aberration of mind, would not, in the judgment of the great majority of mankind, be regarded as an accidental death and the suggestion, I think, results from an acutetness of intellect not plain to a common understanding."

The second contention of plaintiff's counsel is that the insured committed the fatal act under an irresistible impulse and while he was unconscious of what he was doing, and that, therefore, this case is without the condition of the policy.

This finding of fact is not justified by the evidence, and if it were, the legal conclusion, is not, in my opinion, correct.

The dying declaration of the deceased, although introduced without objection, was not properly admissilbe, as it as simply heresay; dying declaratioons being only admissible in criminal cases.

But, waiving its irrelevany, it proves nothing. The very blankness of the insured's mind at the time of making this statement deprives it of all probative force as to the condition of his mind at the time of the at. If it could be found negatively as tending to prove anything, it might tend to prove the absence of any motive other than the natural physical results of the act.

In the case of Bigelow v. Berkshire Life Insurance Company, where it was an action against the Company upon a policy of life insurance which provided that it should be null and void if the insured die by suicided, "sane or insane" the company pleaded that he "died from the effects of a pistol wound inflicted upon his person by his own hand and that he intended by inflicting such wound, to destroy his own life," it was held "that a replicattion setting up that at the time when he inflicted said wound he was of unsound mind, and wholly unconscious of his act, was bad."

Mr. Justice Davis in the opinion in that case said, on page 287:

"For the purposes of this suit it is enough to say that the policy was rendered void, if the insured was conscious of the physical nature of his act, and intended it to cause his death, although at the time he was incapable of judging between right and wrong, and of understanding the moral consequences of what he was doing."

It is certainly not a very satisfactory use of language to talk about the "conscious acts" of a person of unsound mind, and yet an examination of the cases will disclose that these acts are not determined by the

condition of the mind, but by the very nature of the acts themselves.

"Intentional" and "conscious" are used as defining those acts of an insane man from which every element of accident is excluded, and for which there can be no other possible motive than the natural physical consequences of the act.

These acts are so denied to contra-distinguish them from such acts as the following: Where the insane insured took an overdose of whiskey and thereby caused his death—the moving impulse being a desire to slake his thirst, the accident being the overdose. So in the laudanum case and in the case where an insane patient tore bandages from a throbbing wound, seeking a moment's respite, and bled to death. And even the case where a delirious patient jumped from an open window, the suggestion being that pursued by some demon in his disordered mind, he chose this avenue of escape without considering the fatal consequence.

All these cases introduce the element of accident, and this issue must be submitted to the jury, and in the event of the jury finding the death to be accidental, of coure the policy is not void. Pierce v. Travelers' Insurance Company, 34 Wis., 38J.

In many cases the courts seem to have persistently endeavored to inject this element of accident into the case; and even in the able dissenting opinion of Commmissioner Earle· in DeGorza v. Knickerbocker, the commissioner brings in the suggestion of accident as a foundation for his dissenting opinion, which makes the case a different one from that decided by the majority of the court.

The case of the insane insured hanging himself furnishes an example more similar to the case at bar. The mind can suggest but one intention to the act of a man stringing himself up by the neck with a rope to a rafter in a barn. So in the case at bar, in the absence of other motive suggested by the evidence, no matter how delirious Julius Pagenhardt may have been, I can conceive of no other intention to his hacking his throat with a table-knife than the natural physical consequences of the act, death.

I therefore conclude that although deceased's "darkened mind did not enable him to see or appreciate the moral character of his act, he still was conscious of its physical nature, and intended by it to cause his death."

Treat, J., of the United States Circuit Court, E. D., Missouri, from whose court the original Terry case went to the Supreme Court, and who would naturally watch the course of judicial decision on this point, has decided, in the case of Riley v. Hartford Life Insurance Company, 25 Fed. Rep., 315, that where parties insert in the contract "that if death is caused by the assured, sane or insane, then there can be no recovery if he committed the act otherwise than accidentally. So that if the assured caused his own death, that was the end of the right of recovery. Consequently this court has to rule out all testimony looking to the condition of the mind of the assured when he committed the fatal act, the issue on this point being immaterial."

I therefore hold in this case that the verdict only for the amount of the premiums paid, was correct.

Motion for a new trial overruled.

Clement Bates, for plaintiff.

R. C. Pugh and C. D. Robertson, for defendant.